**WORKERS' COMPENSATION COURT and Haskell Baugh, Respondents,**

v.

**STATE INSURANCE FUND and LeFlore County Sheriffs' Office, Petitioners.**

**No. 61433.**

Court of Appeals of Oklahoma, Division No. 4.

May 29, 1984.

Rehearing Denied July 2, 1984.

Certiorari Denied Oct. 10, 1984.

Released for Publication by Order of the Court of Appeals Nov. 2, 1984.

Sam Hill, Bob Karnes, Oklahoma City, for petitioners.

Walter Bower, Robinson & Bower, Inc., Oklahoma City, for respondents.

De MIER, Presiding Judge.

Employer LeFlore County Sheriff's Office appeals the November 28, 1983, order of Workers' Compensation Court awarding benefits to Worker Haskell Baugh for fifty percent permanent partial disability to his

body as a whole as a result of a job related cerebral infarction. Employer, who did not request en banc review, claims the stroke was not an accidental injury arising out of and in the course of Worker's employment. Based on our review of the evidence and applicable law, we find competent evidence supporting the award and affirm.

## FACTS

Fifty-two year old Worker had been employed with the LeFlore County Sheriff's Office for sixteen years. He was on call twenty-four hours every day, including his one off duty day each week. His duties included serving legal papers, transporting prisoners, backing up troopers, patrolling most of the southern half of the county, making "rounds" of the county bars on the weekends, and making arrests.

Many times during the week preceding the May 22, 1983, injury, Worker had to work late. On Saturday, May 21, 1983, Worker performed his daily work activities and checked the taverns that night. He returned home at 3:00 a.m., only to be called out again on Sunday, May 22 at 8:00 a.m. to transport a female prisoner to Poteau, about fifty miles away. Worker dressed, went to the jail, picked up the prisoner, and drove her to Poteau.

Oklahoma Highway Patrol Trooper Arthur Terry saw Worker on the way home from Poteau and noticed Worker was "pale" and "couldn't remember anything." He explained it was unusual that Worker did not remember the name of the prisoner he had just transported because Worker "knew everybody." Terry observed Worker again around 11:30 that morning at Worker's home and noticed Worker was "so weak he couldn't shut the trailer gate." Worker's son-in-law also observed him after the Poteau trip and testified Worker was "pale" and "nervous."

Worker's wife testified after he arrived home from Poteau, she made breakfast for him and then went to check the guinea nest. When she returned to the house, she saw Worker in his rocking chair. She testified, "Well, he was kind of slumped down but I started talking to him and he wouldn't talk to me.... [H]e wouldn't tell me where they had called him to that morning. And when I kind of looked down his face was drawed and I knew he was sick."

Wife further testified Worker's job had become more stressful during the months preceding the stroke, stating, in part:

Well, for one thing if they make trips like out to Lexington, over here where above the city where they take boys, you know, places like that or he makes trips. They usually let him rest and not call him right back out. But, they got to where if he made a trip, if he went to Lexington, he would have to turn around and go right back out.

. . . .

Well, to me they was calling him out more than they should. Well, to see they was calling him out to just go be out when nothing was going on.

When asked if Worker was having problems getting along with the sheriff, Wife replied he was and that Worker also complained of being "so tired," particularly "a week and a half or maybe two weeks before he got sick."

Worker testified as to his call schedule and work load. He spoke of trouble with the sheriff and of the possibility of his being fired. Worker does not remember making the trip to Poteau.

Both Employer and Worker submitted medical reports. Employer's physician, Dr. Mc., rated Worker thirty percent impaired, but expressed his opinion that the stroke was in no way related to job activities.

Worker's physician, Dr. M., submitted a report of his findings which read, in part:

It is my opinion that this patient sustained a cerebrovascular accident on May 22, 1983, with this injury precipitated by the extreme physical stress of his job.... Furthermore, it is my opinion that this patient has sustained 60% permanent impairment to the whole man due to the injuries sustained to his cerebrovascular system due to the accident occurring on May 22, 1983.

## LAW

Employer asserts trial court's order awarding benefits is not supported by competent evidence because Worker did not sustain an accidental injury arising out of and in the course of his employment as required by 85 O.S.1981 § 11. We disagree.

■ First, Worker did suffer an "accidental injury" when the stroke took place, and a showing of unusual strain or exertion is not necessary to prove such injury, although testimony in this case does indicate Worker was subjected to unusual stress before the injury. See *Bill Gover Ford Co. v. Roniger*, 426 P.2d 701 (Okla. 1967) (job related myocardial infarction), wherein the Oklahoma Supreme Court stated in its syllabus:

2. An internal injury of a sudden, unusual and unexpected nature may be accidental in character, although its external cause be attributable to ordinary work performed in a normal manner and without any untoward incident connected therewith.

3. An accidental injury within the meaning of the Workmen's Compensation Act need not be attributable to one particular event but may arise from the cumulative effect of a series of exertion episodes.

4. That over exertion or strain causing ... disability of an employee is more mental than muscular does not preclude an award of compensation, since the term "exertion" or "strain" is not confined in its use to muscular efforts, but means the act of putting some power or faculty into vigorous action; a strong effort, either of the body or the mind.

■ Second, whether an injury arises out of and in the course of a worker's employment is a question of fact for trial court. *Thomas v. Keith Hensel Optical Labs*, 653 P.2d 201 (Okla.1982). We are bound by trial court's findings of fact which are supported by competent evidence. It is well settled that it is not the province of the reviewing court to weigh the evidence in a workers' compensation case nor to determine where the preponderance lies; rather, it should examine the record only to ascertain whether the order is supported by any competent evidence. *Graves v. Safeway Stores, Inc.*, 653 P.2d 1236 (Okla.1982); *Wilkinson v. McGehee*, 651 P.2d 671 (Okla.1982); *In the Matter of the Death of Sade*, 649 P.2d 538 (Okla. 1982); *Loggins v. Wetumka General Hospital*, 587 P.2d 455 (Okla.1978); *Sooner Construction Company v. Brown*, 544 P.2d 500 (Okla.1975); *Western States Construction Company v. Stailey*, 461 P.2d 940 (Okla.1969).

■ The element of "in the course of employment," which deals with the time, place, and circumstances of an injury, is satisfied in this case by the fact that the stroke showed its first effects while Worker was returning from the Poteau trip as Trooper Terry's testimony reveals. The "arising out of" element, which contemplates a causal relationship between the act engaged in at the time injury occurs and the employment requirements, is likewise satisfied by the same evidence.

In addition, Dr. M. stated the cerebral infarction was job related. The episode was preceded by Worker's tiredness, lack of sleep, and worries about his relationship with Employer.

## CONCLUSION

■ We find the record contains competent evidence from which trial court could properly find Worker sustained a compensable job related accidental injury. Based on the above cited authorities, we affirm.

AFFIRMED.

BRIGHTMIRE and STUBBLEFIELD, JJ., concur.