Kenneth M. DECKER, Petitioner,

v.

OKLAHOMA STATE UNIVERSITY and the State Insurance Fund, Respondents.

No. 64483.

Supreme Court of Oklahoma.

Dec. 21, 1988.

Mark Alan Shores, Clay B. Pettis, Messrs. Baum & Ralstin, Oklahoma City, for petitioner.

Fred Nicholas, Jr., Robert Highsaw, Oklahoma City, for respondents.

OPALA, Justice.

The dispositive issue presented on certiorari is whether the claimant's heart attack, which was claimed to have been caused by mental stress and anxiety created within the work environment, resulted from a risk reasonably incident to employment. We answer in the affirmative, because there is competent evidence that a change in the administrative structure of claimant's work environment caused the mental stress and that his supervisors knew about, but did nothing to alleviate, the stressful workplace milieu.

### FACTS

In August 1981 Kenneth Decker [claimant or worker] became employed by Oklahoma State Technical University [employer or Oklahoma State Tech] in Okmulgee as a data processing instructor. He taught five junior college level classes each weekday between 8:00 a.m. and 3:00 p.m. His only other duties were to attend faculty meetings and graduation exercises.

From the beginning of his employment until March 1984 the claimant's job performance evaluations were generally above average. In January 1984 a fellow instructor, Ms. C., was appointed data processing program manager. With Ms. C.'s transition to a supervisory job there was no clarification of her responsibilities vis-a-vis the claimant. Shortly after her appointment, Ms. C. asked the claimant to work overtime and evenings without compensation to develop a new curriculum. When the claimant refused to perform the additional work his relationship with Ms. C. became strained, causing him to suffer from insomnia and anxiety.

In March 1984 the claimant received from his supervisor, Mr. B., a below-standard job evaluation. Mr. B. testified that the claimant was "very upset" about this report. Because the claimant "could see the handwriting on the wall," he became worried about the possible loss of his job. On April 12, 1984 Oklahoma State Tech

Director, Dr. K., told the claimant that he was a poor instructor and if he did not dramatically improve he would be forced to resign. The claimant testified that this meeting aggravated his anxiety and insomnia. Dr. K. sent the claimant a letter on April 16, 1984 confirming the April 12 conversation. The claimant performed his teaching duties until April 30, 1984 when he suffered a myocardial infarction while in his office.

Claimant sought workers' compensation benefits. The trial judge found that the claimant's heart attack was not compensable under the Act because it was not an accidental personal injury arising out of and in the course of employment. The order denying compensation was affirmed by a three-judge review panel. The Court of Appeals vacated the order, holding there was competent evidence, and none to the contrary, that the claimant did suffer an accidental injury arising out of and in the course of employment. It also noted that one of the claimant's medical witnesses gave *uncontroverted* testimony that the worker's heart attack was "quite likely ... related to the stress from his employment." The employer and insurance carrier now seek review by certiorari. Although we reach the same conclusion as did the Court of Appeals, we grant certiorari to afford precedential guidance with an indepth discussion of the applicable legal principles.

## THE APPLICABLE LAW

A presumption arose under § 27 of Oklahoma's Workers' Compensation Act [1] that a claim for injury or death of a worker comes within the Act's provisions. Any reasonable doubt is resolved in the claimant's favor. Despite this presumption, the claimant bears the burden of producing competent evidence to establish the fact of injury and its compensability under Oklahoma law.[2]

Compensation is due an injured employee only when the harm suffered meets the requirements of an *accidental personal injury, "arising out of"* and *"in the course of employment."* [3] Whether an injurious event satisfies each of these elements is a fact issue.[4] Except for jurisdictional issues, this court must accept as binding a trial tribunal's findings of fact which are supported by any competent evi-

1. The terms of 85 O.S.1981 § 27, the statute in force when the injury occurred and when the claim was decided but repealed since that time (Okl.Sess.L.1986, Ch. 222, § 32, eff. November 1, 1986), provided in pertinent part:
   "In any proceeding for the enforcement of a claim for compensation under the Workers' Compensation Act, *it shall be presumed* in the absence of substantial evidence to the contrary:
   1. That *the claim comes within the provisions of the Workers' Compensation Act.* * * *"
   [Emphasis added.]
   See also *Matter of Death of May,* Okl., 586 P.2d 738, 740 [1978].

2. *Matter of Death of May, supra* note 1 at 740; and *Paschen v. Ratliff City Trucking Co.,* Okl. App., 637 P.2d 591, 593 [1981].

3. The terms of 85 O.S.1981 § 3(7) provided: "'Injury or personal injury' means only *accidental injuries arising out of and in the course of employment* and such disease or infection as may naturally result therefrom and occupational disease arising out of and in the course of employment as herein defined." [Emphasis added.]

The quoted language was not affected by § 3's 1985 and 1986 amendments (see Okl.Sess.L. 1985, Ch. 266, § 1, and Okl.Sess.L.1986, Ch. 222, § 5).
The terms of 85 O.S.1981 § 11 provided in pertinent part:
   "Every employer subject to the provisions of the Workers' Compensation Act shall pay ... compensation ... for the disability or death of his employee resulting from an *accidental personal injury sustained by the employee arising out of and in the course of his employment* ...." [Emphasis supplied.]
The quoted language was not affected by § 11's amendment in 1985 (see Okl.Sess.L.1985, Ch. 266, § 2).
See also, *Thomas v. Keith Hensel Optical Labs,* Okl., 653 P.2d 201, 202 [1982]; and *Schell v. Blue Bell, Inc.,* Okl.App., 637 P.2d 914, 916 [1981].

4. *Thomas v. Keith Hensel Optical Labs, supra* note 3 at 203; *Workers' Compensation Ct. v. State Ins. Fund,* Okl.App., 689 P.2d 1282, 1285 [1984]; and *International Spa v. Jones,* Okl., 525 P.2d 630, 632 [1974].

dence.[5] This court does not weigh the evidence to determine where the preponderance lies, but rather examines the record only to ascertain whether the trial tribunal's factual findings are supported by any competent probative evidence.[6] If they are not, the matter presents but a question of law determinable by this court on review.[7]

With these principles in mind, we will examine the record to determine whether the trial tribunal's finding that the claimant's heart attack was not a compensable injury stands supported by any competent evidence.

## I

## CLAIMANT'S HEART ATTACK WAS AN ACCIDENTAL PERSONAL INJURY SUSTAINED IN THE COURSE OF HIS EMPLOYMENT

■ The term "accidental personal injury" is given a broad and liberal construction.[8] An injury may be an accidental personal injury within the meaning of the Act if it (a) arises from the cumulative effect of a series of micro-trauma or exertion episodes rather than from one particular event, (b) is caused by overexertion or strain that is more mental than muscular, or even if (c) it results from ordinary work performed in a normal manner.[9]

■ In accord with these principles, a myocardial infarction is compensable as an "accidental personal injury" if it "arises out of" and "in the course of" employment.[10] Because the evidence that the claimant suffered a myocardial infarction is undisputed, his heart attack satisfies the first requirement of a compensable injury.

■ In a workers' compensation case the element of "in the course of employment" relates to the time, place and circumstances under which the injury was sustained.[11] The claimant was on the employer's premises during normal working hours when his heart attack occurred. The employer does not argue the claimant's injury was not sustained "in the course of employment." Since there is no competent evidence to the contrary, the claimant's heart attack satisfies the second requirement of a compensable injury.

## II

## CLAIMANT'S INJURY "AROSE OUT OF EMPLOYMENT" BECAUSE IT RESULTED FROM A RISK REASONABLY INCIDENT TO EMPLOYMENT

■ An on-the-job injury "arises out of" employment only if (1) a causal connection

5. The terms of 85 O.S.1981 § 26 provided in pertinent part:
   "* * * The decision of the [Workers' Compensation] Court shall be final as to all *questions of fact.* . . ." [Emphasis supplied.]
   The quoted language was not affected by § 26's amendment in 1986 (see Okl.Sess.L.1986, Ch. 222, § 16).
   See also *Thomas v. Keith Hensel Optical Labs, supra* note 3 at 203; *Paschen v. Ratliff City Trucking Co., supra* note 2 at 593; *Fisher v. Douglas Aircraft Company,* Okl., 440 P.2d 708, 712 [1968]; *Workers' Compensation Ct. v. State Ins. Fund, supra* note 4 at 1285; *In re Loague,* Okl., 450 P.2d 492, 495 [1969]; and *Kinser v. Western Sands, Inc.,* Okl., 454 P.2d 305, 308 [1969].

6. *Workers' Compensation Ct. v. State Ins. Fund, supra* note 4 at 1285 and *Special Indem. Fund v. Stockton,* Okl., 653 P.2d 194, 198 [1982].

7. *Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 551–552 [1984]; *Special Indem. Fund v.*

*Stockton, supra* note 6 at 198; and *International Spa v. Jones, supra* note 4 at 632.

8. *Sapulpa Tank Company v. Cole,* Okl., 386 P.2d 988 [1963] (syllabus 1).

9. *Bill Gover Ford Company v. Roniger,* Okl., 426 P.2d 701, 703 [1967]; and *Flint Construction Company v. Downum,* Okl., 444 P.2d 200, 203 [1968].

10. *Bill Gover Ford Company v. Roniger, supra* note 9 at 702; and *Flint Construction Company v. Downum, supra* note 9 at 200.

11. *Workers' Compensation Ct. v. State Ins. Fund, supra* note 4 at 1285; *Thomas v. Keith Hensel Optical Labs, supra* note 3 at 202; *Belscot Family Center v. Sapcut,* Okl., 509 P.2d 905, 908 [1973]; and *Liebmann Arctic Ice Company v. Henderson,* Okl., 486 P.2d 739, 742 [1971].

exists between the conditions under which the work was required to be performed and the resulting injury, and (2) the injury resulted from a risk reasonably incident to the employment.[12]

## A. The Causal Connection

■ The claimant presented uncontroverted evidence that his heart attack was linked to the work-related stress and anxiety he suffered because of difficulties with Ms. C. and Dr. K. The employer does not dispute this causal connection in its brief.[13] The claimant presented two medical reports, which were admitted without challenge. Dr. E.'s report indicated that the claimant's heart attack resulted from interpersonal relationships at work which caused him to suffer from stress, anxiety and insomnia. The report by Dr. C. states that "sudden severe emotional stress can precipitate acute myocardial infarction." Dr. C's supplemental report advises, "it is *quite likely* that it [claimant's heart attack] is *related* to the stress from his employment." [Emphasis added.] Since there is no competent evidence to the contrary, the causal connection requirement stands satisfied.

## B. A Risk Reasonably Incident To Employment

The remaining requirement of a compensable injury to be satisfied is that the heart attack must have resulted from a risk reasonably incident to the claimant's employment. The claimant asserts his heart attack resulted from "extraordinary conditions tantamount to tactical harassment [which] were created by an employment situation." Employer claims the heart attack resulted from "worrying about the loss of one's job and worrying about conflicts with supervisors." In essence, the dispute between the parties is whether the claimant's heart attack resulted from work conditions or because he worried too much —a crucial distinction here.

## Self-induced mental stress

The employer directs us to extant Oklahoma caselaw as well as that of other jurisdictions which pronounces that injuries caused by a worker's self-induced worrying are not compensable. For example, in *City of Austin v. Johnson*[14] the worker suffered a fatal heart attack after learning that his job would be terminated. The court held that worry and anxiety caused by job loss is not a risk incidental to employment and an injury resulting from it is not compensable. In *Ada Coca–Cola Bottling Company v. Snead*[15] an 80–year–old worker, who had already suffered a heart attack and two amputations of the left leg, fell and sustained bruises and abrasions to the head, cheek, forehead, arm and shoulder. He continued to work and approximately 20 days later suffered a stroke which left him totally disabled. Four months after the stroke he died of a heart attack. His family sought compensation benefits upon the theory that the fatal heart attack resulted from worrying about not being able to work because of the fall. This court held in *Snead* that such worrying was not a risk reasonably incident to employment and vacated the compensation award.[16] In *Kinser v. Western Sands,*

12. *In re Loague, supra* note 5 at 496; *K.P. Const. Co. v. Death of Parrent,* Okl., 562 P.2d 501, 504 [1977]; *Belscot Family Center v. Sapcut, supra* note 11 at 906 (syllabus 2); *Novak v. McAlister,* Okl., 301 P.2d 234, 236 [1956]; *Oklahoma City v. Schoonover,* Okl., 535 P.2d 688, 689 [1975]; and *Liebmann Arctic Ice Company v. Henderson, supra* note 11 at 742.

13. See the Respondents' answer brief at page 8: "The medical evidence indicates that the cause of the myocardial infarction is quite

likely related to his worrying about his employment."

14. 525 S.W.2d 220 [Tex.Civ.App.1975].

15. Okl., 364 P.2d 696 [1961].

16. *Ada Coca–Cola Bottling Company v. Snead, supra* note 15 at 699.

*Inc.*[17] the claimant, a motel operator, was a "worrier". For several weeks prior to his heart attack the claimant had been worried because the cafe connected with the motel was being operated inefficiently, and a trusted motel employee was quitting. There, the court held that "a man will not be permitted to 'worry' himself into a heart attack and receive compensation disability for the attack." [18]

### Mental stress engendered by work conditions

The claimant asserts that the facts of his case closely resemble those in *Bill Gover Ford Company v. Roniger.*[19] There, a clerical worker, approximately two weeks before sustaining a heart attack, was required to perform new and additional duties which subjected her to *both* mental and physical strain. In *Roniger* the court recommitted itself to the rule that heart disabilities may be caused by serial episodes of micro-strains or exertions. We also observed that in other jurisdictions strain is not confined to physical activity, but may also consist of unusual emotional stress, nervous strain, anxiety or tension. *Roniger's* teaching, which has been applied to on-the-job mental stress,[20] *is in the mainstream of today's national jurisprudence.*[21]

In *Oklahoma City v. Schoonover*[22] the claimant was a police officer who aggrava-

ted a pre-existing ulcer and subsequently died during a surgical procedure to repair the ulcer. The medical evidence clearly linked the ulcer's aggravation to the mental stress and strain of the officer's work. The *Schoonover* employer—as does the employer in the present case—attempted to equate "worry", as defined in *Snead* and *Kinser*, with the officer's on-the-job mental stress. The court viewed the two as fundamentally different. The deceased officer's mental stress and strain was not created by "worry" over inability to work; rather, it was engendered by the employment's work conditions.[23] Similarly, in *Stiles v. Oklahoma Tax Com'n.*[24] the claimant, a tax auditor, was subjected to work-related stresses which aggravated a pre-existing arthritic condition. The claimant's disability was held to be compensable.

The essence of our inquiry is thus narrowed to determining whether the circumstances under which the claimant's heart attack occurred are more akin to those in *Snead* and *Kinser* or those in *Schoonover* and *Stiles*. We hold they correspond to the latter cases.

Here, no evidence was presented which indicates that the claimant is an "innate worrier," i.e., one who suffered from self-generated mental stress. Until 1984 the claimant's work conditions were unremarkable and he manifested no stress-related

17. *Supra* note 5.

18. *Kinser v. Western Sands, Inc., supra* note 5 at 307–308.

19. *Supra* note 9.

20. See *Oklahoma City v. Schoonover, supra* note 12; and *Stiles v. Oklahoma Tax Com'n., infra* note 24.

21. See Larson, The Law of Workmen's Compensation, 1B § 42.20—42.21, pgs. 7–585—7–601. Larson notes that the largest volume of recent litigation on the meaning of "injury" has involved various mental, nervous and stress conditions which he groups into three categories: *mental stimulus causing physical injury;* physical trauma causing nervous injury; and mental stimulus causing nervous injury. See *Larson,* § 42.20. Pertinent here is the first category which Larson describes as one "in which a men-

tal (as distinguished from physical) impact or stimulus results in a distinct physical injury." See § 42.21(a). Larson originally noted that, except for Ohio, "the decisions uniformly find compensability" in this category of cases. See cases cited in § 42.21(a) at pgs. 7–586—7–591. Larson's most recent supplement informs us that Ohio jurisprudence has now changed to "join the mainstream" by removing its judicially imposed limitation that an injury must be physical in nature and that worry and anxiety alone do not constitute an on-the-job injury.

22. *Supra* note 12.

23. *Oklahoma City v. Schoonover, supra* note 12 at 691.

24. Okl., 752 P.2d 800, 802–803 [1988].

symptoms. Claimant's workplace milieu changed considerably in 1984. Before the change, the claimant had worked in a relaxed atmosphere with little supervision and was not required to perform duties except those for which he was specifically hired. The claimant's work environment was modified when Ms. C.'s status changed from that of co-worker to supervisor without a clarification of her responsibilities vis-a-vis the claimant. When she asked the claimant to perform additional duties for which he would not be compensated and he refused, their relationship turned into one of mutual dislike. Although higher-level school supervisors knew about the friction between them, no action was taken to alleviate the stressful milieu. Instead, Mr. B. and Dr. K., for the first time, rated the claimant's performance as unsatisfactory. Dr. K. threatened to terminate the claimant without specific explanation of what improvements could be made to avoid discharge. It was simultaneously with these changes in work conditions that the claimant began suffering from anxiety and insomnia.

■ We are not persuaded by the employer's assertion that *Schoonover* is factually distinguishable from the present case. The key element in both *Schoonover* and *Stiles,* which is also present here, is that the claimant's injury resulted from stress and anxiety caused by the employment's work conditions, not by a self-generated innate propensity to worry. The requirement that the claimant's injury result from a risk reasonably incident to his employment is thus satisfied.

In sum, the evidence that the claimant's mental stress existed and was caused by the work environment is uncontroverted. There is no competent evidence to contradict the established nexus of the work-related stress with the claimant's heart attack. We therefore hold that the trial tribunal's legal conclusion that the claimant did not suffer an accidental personal injury arising out of and in the course of his employment is unsupported by any competent proof.

The Court of Appeals' opinion and the review panel's order are vacated and the cause is remanded to the trial judge for further proceedings not inconsistent with this pronouncement.

DOOLIN, C.J., and HARGRAVE, V.C.J., and LAVENDER and ALMA WILSON, JJ., concur.

KAUGER and SUMMERS, JJ., concur by reason of stare decisis.

HODGES and SIMMS, JJ., dissent.