2002 OK 8

Inetta FLANNER, Petitioner,

v.

**TULSA PUBLIC SCHOOLS and the Workers' Compensation Court, Respondents.**

No. 95,223.

Supreme Court of Oklahoma.

Feb. 12, 2002.

As Corrected Feb. 13, 2002.

Susan Jones, Wilson Jones, P.C., Tulsa, OK, Attorney for Petitioner.

Catharine Bashaw, Rosenstein, Fist & Ringold, Tulsa, OK, Attorney for Respondent.

SUMMERS, J.,

¶ 1 The issue presented by this review proceeding is whether an employee may recover worker's compensation benefits for burn injuries sustained at work when she fell against a large coffee pot while suffering an epileptic seizure. The trial judge found the injury was not compensable and the. Court of Civil Appeals sustained the order, and we have previously granted certiorari. We find that the employee is entitled to worker's compensation benefits. We vacate the opinion

of the Court of Civil Appeals, and remand the matter to the trial court.

¶ 2 Inetta Flanner was employed by the Tulsa County Public School District as a child nutritionist. Among other things, her job required her to get supplies out of the cafeteria for use in the snack bar where she worked. The record shows that on the day in question she had gone to the cafeteria to get foam plates for the children's snacks where she suffered an epileptic seizure, and fell into a commercial coffee pot and severely burned her right arm. It shows also that Ms. Flanner had failed to take her anti-seizure medication as prescribed.

¶ 3 Our statutory scheme requires that an employer must provide Worker's Compensation benefits for an accidental personal injury sustained by an employee "arising out of and in the course of the employment, without regard to fault as a cause" of the injury. 85 O.S. Supp.1997–11. The two elements are distinct and are not to be understood as synonymous. The phrase "in the course of" relates to the time and place or circumstances under which the injury was sustained, while the phrase "arising out of" contemplates a causal connection between injury and the risks incident to employment. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, 653 P.2d 201.

¶ 4 Whether a claimant's injury "arises out of" and is "in the course of" employment is generally a question of fact for the Worker's Compensation court, and the "any competent evidence" standard of review applies. However, where there are no disputed facts, the question presented is one of law. *City of Edmond v. Monday*, 1995 OK 132, 910 P.2d 980. Here the undisputed facts do not support the order denying compensation to Ms. Flanner.

¶ 5 The employer School District does not dispute that Ms. Flanner was injured at work while performing her job. It concedes that she was "in the course of" her employment, but contends that her injury was not the result of a work related accident because it did not "arise out of" her job, but rather resulted from an idiopathic condition, her epilepsy, which was a personal risk not relat-

ed to her employment. The District argues that there was no causal nexus between her work activity and her injury. It also contends that her seizure was brought on by her willful negligence in failing to take her medication properly and that her work activity did not involve the coffee pot.[1] The Court of Civil Appeals sustained the order denying worker's compensation benefits.

¶ 6 Ms. Flanner seeks our review. She contends that her injury comes within the statutory parameters of risk-connectedness of 85 O.S. Supp.1997–3 (10)(a), requiring that "[o]nly injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out the employment." She argues that the presence of the hot coffee pot was a condition of her employment which contributed to her injury, and that if she hadn't been at work performing her duties she would not have been burned by the employer's coffee pot when she fell.

 ¶ 7 As the following discussion of our case law makes clear, we have adopted the generally accepted rule that where a pre-existing idiopathic condition is the sole cause of a worker's injury and no other factor operates to contribute to the injury, no compensation is awarded. But where an injury results from a concurrence of an idiopathic condition and some hazard of employment, compensation is allowed. Compare *Halliburton Services v. Alexander*, 1976 OK 16, 547 P.2d 958, and *Bittman v. Boardman Co.*, 1977 OK 32, 560 P.2d 967.

¶ 8 Professor Larsen states that there is now general agreement that the effects of an idiopathic fall are compensable if the conditions of employment place the employee in a position increasing the dangerous effects of a fall. These factors include such things as the employee being on a height, being near machinery or. sharp corners, or in a moving vehicle, as well as falling into such familiar objects such as tables and bookcases. A. Larsen, Workers' Compensation Law § 9.01(2001).

¶ 9 The School District's reliance on our decision in *Marion Machine Foundry & Supply Co. v. Redd*, 115 Okl. 30, 241 P. 175 (1925), as authority requiring us to uphold the denial of compensation to Ms. Flanner, is not persuasive. It is true that in *Redd* we vacated an award of compensation to an employee who was injured at work when he suffered an idiopathic fall resulting from an epileptic seizure which caused him to fall into a fire. The syllabus by the Court does appear to announce an unqualified rule against allowing compensation for idiopathic falls, it provides:

> Where the injury suffered was the result of a fall caused by an attack of epilepsy, such injury is not one arising out of the employment, and not compensable under the Workmen's Compensation Law (Comp. St.1921, § 7284, subd. 7).

¶ 10 The body of the opinion, however, discloses that the Court was not so absolute in its position. The Court discussed at some length the English case of *Wicks v. Dowell*, 2 K.B. 225(1905), which set forth an exception to the rule against compensation under proper circumstances. In *Wicks*, the Court granted an employee compensation for injuries from a idiopathic fall where he had received an injury which he would not have suffered but for a situation peculiar to the employment. The court found his job requirement created a peculiar hazard connected with the place of the fall. Claimant's job

---

1. The parties' efforts to analyze and argue this matter from the perspective of authorities such as *Turner v. B Sew Inn*, 2000 Ok 97, 18 P.3d 1070, *Corbett v. Express Personnel*, 1997 OK 40, 936 P.2d 932, *Odyssey/Americare of Oklahoma v. Worden*, 1997 Ok 136, 948 P.2d 309 and *American Management Systems v. Burns*, 1995 OK 58, 903 P.2d 288, miss the mark. Those cases are concerned with the "arising out of" prong in factual situations which involve the causal connections between employment conditions and neutral risks and employment-related risks, as well as issues regarding on premises injuries and off premises injuries not presented in this matter, which concerns only a risk or condition personal to the claimant, an idiopathic condition. The distinction is well summarized by Professor Larson: "It should be stressed that the present question [internal weakness causing fall], although often discussed in the same breath with unexplained falls, is basically different, since unexplained-fall cases begin with a completely neutral origin of the mishap, while idiopathic fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin." A. Larson, Law of Workmen's Compensation, § 9.01(2001).

was to unload coal from a ship by means of a hydraulic crane and regulate and control the bucket's movements into and out of the hold. To carry out this duty he was required to stand in a dangerous position close to the edge of the hatchway, where he had an epileptic seizure and fell through the hatchway into the hold sustaining serious injuries. The *Redd* Court took notice of this exception to the rule against compensability and distinguished the holding in *Wicks*, explaining that under the facts of the instant case there was no peculiar hazard connected with the place of the fall or service rendered. In doing so, the Court recognized and implicitly predicted what would become the generally accepted rule allowing compensation when a condition of employment contributes to the risk or aggravates the injury.

¶ 11 In *McKeever Drilling Co. v. Egbert*, 1934 OK 763, 40 P.2d 32, 33–34, the Court revisited *Redd* and *Wicks* in considering whether to award compensation to an employee who fell when he suffered a heatstroke and struck his head against the machinery he had been working on. Addressing the employer's contention that the heat stroke was the first step in the line of causation of claimant's injury and the fall therefore resulted from an incident not associated with the employment, the Court followed *Wicks*, and held that the injuries from an idiopathic fall arise out of employment and are compensable when a condition peculiar to the employment increases the hazard, and that if it were not for that condition, the person would not have suffered the injury. The Court quoted extensively from *Wicks*, including the following explanation:

How does it come about in the present case that the accident arose out of the employment? Because by the conditions of his employment the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position. Upon the authorities, I think the case is clear; and accident does not cease to be such because its re-

mote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment.

¶ 12 The *McKeever* Court concluded:

In our opinion, under the facts in this case, the hazard of receiving an injury such as is claimed herein is peculiarly incident to the presence of the engine in close proximity to employee and his duties. He was where he was required to be and was doing the work he was ordered to do, and doing it in a manner satisfactory to his immediate superior, and by probably the only method by which it could be performed.... Persons seized with epilepsy, vertigo, sunstroke, or other sudden and overpowering attacks usually fall where they are, and it is the presence of machinery, or height, or some other condition peculiar to the employment which increases the hazard or injury, but for the presence of which condition peculiar to the employment the person so seized would suffer no greater hazard of additional injury than one not so situated. The hazard of an injury from falling against the engine was one incident to the proximity of the engine to claimant's work, and the injury actually received arose out of the employment.

¶ 13 In *Moten v. Chandler Well Service*, 1961 OK 125, 363 P.2d 153, claimant was an oil field worker who had become light-headed due to illness with pneumonia, and he fell seven feet from a platform onto his face and arms. The Court reviewed *Redd* and *McKeever* at length, and vacated the order denying compensation. The *Moten* Court observed that while *Redd* seems to be an unqualified ruling against the compensability of idiopathic falls, the opinion actually discussed *Wicks* and recognized its exception allowing compensation where a factor peculiar to employment increases the hazard of injury. The Court then followed the reasoning of *McKeever*, which was based on *Wicks*, and found that the injury from that idiopathic fall was compensable as arising out of employment, since it resulted from a factor peculiar to the employment, a height.

¶ 14 Following the line of authority of *Redd, Wicks, McKeever* and *Moten* we held in *Halliburton Services v. Alexander,* 1976 OK 16, 547 P.2d 958, that injury from an idiopathic fall that resulted from claimant's sudden onset of intense pain from a back injury and arthritis which caused claimant's leg to give way as he was descending a stairway was compensable. We found the injury was contributed to by the necessity to ascend and descend stairways, which was a factor peculiar to claimant's employment. We recognized there that compensation benefits are not limited to perfectly healthy workers, and held that where accidental injury results from a risk factor peculiar to the task performed and would not have occurred except for the employment, it arises out of employment even though the fall had its origin in the idiopathy of the employee.

¶ 15 *Elred v. Sulphur Manor, Inc.,* 1997 OK CIV APP 59, 947 P.2d 605, relied on by the School District, is not dispositive of the issue before us. While claimant in that matter did suffer injury from an idiopathic fall as a consequence of epileptic seizure and was denied compensation, there was competent evidence that the seizure did not occur in the course of employee's work on the employer's premises.

¶ 16 The School District makes much of the fact that Ms. Flanner was shown to have failed to take her anti-seizure medication as prescribed, and it ascribes responsibility for the seizure to her omission. Fault is not an issue in Worker's Compensation law. 85 O.S. Supp.1997–11.

¶ 17 The injury to Ms. Flanner occurred within the course of her employment at a place she was expected to be while she was performing her required duties. The injury resulting from her fall was contributed to by the presence of the hot coffee pot which was a factor peculiar to her employment. As we stated in *Halliburton,* supra, 547 P.2d at 960, "Where accidental injury results from a risk factor peculiar to the task performed it arises out of the employment, even though the fall had its origin in the idiopathy of the employee."

¶ 18 On certiorari petition sought by claimant, Inetta Flanner, previously granted, the opinion of the Court of Appeals is vacated, and the matter is remanded to the trial court for proceedings consistent with this opinion.

¶ 19 HARGRAVE, C.J., LAVENDER, KAUGER, SUMMERS, BOUDREAU, JJ., Concur.

¶ 20 WATT, V.C.J., HODGES, OPALA, WINCHESTER, JJ., Dissent.

HODGES, J., dissenting, with whom Watt, V.C.J., Opala, Winchester, JJ., join.

¶ 1 The majority's analysis of the "arising out of" jurisdictional element of the worker's claim is lamentably defective. This Court has reached a conclusion directly contrary to the controlling statute and to decisions of this Court based on that statute.

¶ 2 "Prior to the 1986 amendment to Oklahoma Workers' Compensation Act, Oklahoma cases relied primarily on the increased risk doctrine to determine whether a risk arose out of a worker's employment. However, the peculiar risk and positional risk tests had also been applied." *Odyssey/Americare v. Worden,* 1997 OK 136, 948 P.2d 309, 312. In 1986, however, the Legislature rejected the positional risk and peculiar risk doctrines in favor of the increased risk doctrine. *Id.* The Act now provides that "[o]nly injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out of the employment." Okla. Stat. tit. 85, § 3,(10)(a) (Supp. 1997). Since 1986, this Court has held that, as provided by the Act, purely personal and neutral risks are not covered. *See e.g., American Management Sys. v. Burns,* 903 P.2d 288, 292, *Odyssey,* 948 P.2d at 312.

¶ 3 It is difficult to imagine a risk that is more purely personal than a pre-existing medical condition. The worker's epilepsy, and thus her risk of falling, had nothing to do with a risk of employment. But rather than accept the obvious result mandated by the Act, the majority embarks on a tortuous, illogical, and irrelevant journey through the common law in a thinly veiled attempt to compensate the injured worker no matter the applicable law.

¶ 4 The journey begins by first burying *Burns* and its progeny in footnote 1 and dismissing them as cases analyzing only neu-

tral risks. In reality, these cases implicitly recognized the Legislature's declaration that the Act covers "[o]nly injuries having as their source a risk not purely personal." Freed from the confines of applicable law, the majority then proceeds to resurrect the positional risk and peculiar risk tests via English common law and pre-1986 Oklahoma cases which applied those tests. Ultimately, the majority holds that "the presence of the coffee pot" was a factor peculiar to the worker's employment such that she should be compensated.

¶ 5 The coffee pot was not a "condition of employment" and thus, was not a risk factor in the worker's injury. It was in no way related to her work activity. It was merely there when she fell. She could just as easily have been injured by falling on a piece of furniture or some other object present in any work setting; nor was the worker operating or even handling the coffee pot. It was just there. The cause of her injury was the fall and that fall was caused by her purely personal medical condition. The coffee pot was part of the resulting injury, not its cause.

¶ 6 As much as the majority may wish to compensate the worker, this Court is required to apply the law. The applicable law is to be found in the Legislature's declaration that injuries resulting from purely personal risks are not compensable. In refusing to apply the applicable law this Court has usurped the Legislature's role of policy making, abandoned its judicial responsibility, and introduced confusion into what had become a settled matter of law.

OPALA, J., with whom WATT, V.C.J., and HODGES, J., join, dissenting.

¶ 1 The court holds today that an employee's idiopathic-fall [1] injury, sustained when she fell at the workplace upon a coffee pot, arises from a compensable employment-related risk. **I cannot accede to its pronouncement.** The critical issue this case presents for resolution is whether by its mere character or location at the *locus in quo* the offending coffee maker may be regarded as posing a workplace-generated hazard that **elevates the danger of physical harm** from an idio-pathic fall's trauma which one in claimant's circumstances would be expected to suffer. **On this record, the law will support only a negative answer.** No connection is urged (and none was shown) to indicate that the presence of the coffee maker in the perimeter of claimant's fall **increased the severity of harm** from her fall. In its position at the scene of the accident the coffee maker **did not elevate one iota the danger from a traumatic impact of claimant's fall.** At most, its presence may have introduced some minimal risk of thermal harm from claimant's contact with a heated surface of the electrical appliance or with its liquid contents. **This claim suffers from both a failure of requisite proof as well as from the absence of an acceptable theory of compensability.**[2] **I would hence sustain the trial judge's order that denies compensation for claimant's idiopathic-fall injury.**

¶ 2 The court's distorted tests for evaluation of true workplace risks that affect an idiopathic fall passes as compensable all falls from purely personal hazards. **It will make the employer liable for every conceivable injury occasioned by a spontaneous internal systemic failure.** Once again, the court's opinion has effectively excised from our legal system the statute's mandate that a compensable injury arise out of claimant's employment.

I

ANATOMY OF LITIGATION

¶ 3 Inetta Flanner [Flanner], a child nutrition worker for the Tulsa Public Schools, Independent School District No. 1 [District], was injured 6 March 1998 **when she admittedly suffered at work an epileptic seizure and fell onto a coffee pot** in the school cafeteria, sustaining burns to her right arm. The trial judge denied compensation based on her finding that the precipitating cause of Flanner's injuries, her idiopathic fall, was not "employment related." The parties stipulated that Flanner's injuries occurred during the course of her employment while she was performing the assigned duties. The Court of Civil Appeals [COCA] sustained the trial judge's order. **This court vacates the**

---

1. For the definition of an idiopathic fall, see *infra* note.

2. *See* discussion *infra* in Part III.

COCA opinion and declares the accidental fall to be compensable.

## II

### THE ARISING-OUT-OF-EMPLOYMENT ELEMENT OF PROOF FOR ESTABLISHING COMPENSABILITY

¶ 4 An on-the-job injury, to be compensable, must both arise out of[3] and occur in the course of[4] the worker's employment.[5] The "arise out of" and "in the course of" clauses are not interchangeable in meaning.[6] Because the parties stipulated that Flanner's harm occurred in the course of her employment, this review calls solely for an analysis of the arising-out-of element of proof.

¶ 5 The compensation law's arising-out-of employment prong *contemplates* a causal relationship between the act claimant was engaged in at the time of injury and the employment-generated elements of risk.[7] Presented for our assessment is an interplay of risks from which we determine if the harm for which compensation is sought has the requisite connection to the hazards of the job.[8] Oklahoma jurisprudence recognizes three categories of risk associated with injuries claimed to be compensable:[9] (a) those that are distinctly employment related,[10] (2) those purely personal to the worker,[11] and (3) those that are neutral.[12] *This case tenders for our examination the second category—a purely personal risk from an idiopathic fall.*[13]

## III

### THE COMPENSABILITY OF AN IDIOPATHIC FALL–INJURY IS TO BE GAUGED BY THE PRESENCE OF A WORKPLACE HAZARD WHOSE MAGNITUDE ELEVATES THE DANGER OF INCREASED TRAUMA FROM THE FALL

¶ 6 The employer is not liable in compensation for the consequences of an on-the-job accident occasioned by a worker's idiopathic

3. *Lanman v. Oklahoma County Sheriff's Office,* 1998 OK 37, ¶¶ 8–11, 958 P.2d 795, 798–800; *American Management Systems, Inc. v. Burns,* 1995 OK 58, 903 P.2d 288, 291; *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201, 202.

4. The "in-the-course-of" employment prong relates to the time, place or circumstances under which the injury is sustained. *Lanman, supra* note 3, at 798; *Decker v. Oklahoma State University,* 1988 OK 152, 766 P.2d 1371, 1374; *Thomas, supra* note 3 at 202.

5. The pertinent terms of 85 O.S.Supp.1997 § 3 (10) make compensable:

 . . . only accidental injuries *arising out of* and in the course of employment . . . as herein defined. Only injuries having as their source *a risk not purely personal* but one that is *causally connected* with the conditions of employment shall be deemed to arise out of the employment.
 (emphasis added).

6. These two distinct and indispensable elements of a compensable injury are not to be understood as synonymous. *Stroud Municipal Hosp. v. Mooney,* 1996 OK 127, ¶ 5, 933 P.2d 872, 874; *American Management, supra* note 3 at 290–91; *Thomas, supra* note 3 at 202; *Richey v. Commander Mills, Inc.,* 1974 OK 47, 521 P.2d 805, 807.

7. *Lanman, supra* note 3, at ¶ 9, at 799.

8. *City of Edmond v. Monday,* 1995 OK 132, 910 P.2d 980, 983; *Fudge v. University of Oklahoma,* 1983 OK 67, 673 P.2d 149, 150.

9. *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, 948 P.2d 309, 311; Michael E. Utter, Arising Out Of And In The Course Of . . . (a publication of the Oklahoma Trial Lawyers Association, Nov. 1, 1996). *See* 1 Larson, Workmen's Compensation Law § 7.00 at 3–12 (1996).

10. In the first category of risks are those so uniquely associated with employment that they may be regarded as *distinctly employment related* (risks that are solely connected with job performance are employment related). 1 Larson, *supra* note 9, § 7.10 at 3–12 to 3–13.

11. Among the personal risks are spontaneous internal systemic failures and crimes intentionally inflicted upon the employee (who happens to be on the job) by persons who harbor personal ill will. In this category, the employment is irrelevant to the harm suffered. 1 *Larson, supra* note 9, § 7.30, at 3–13 to 3–14).

12. The so-called neutral risks, such as weather conditions, which are neither distinctly occupational nor personal, present fact questions to be resolved in each case. *Thomas, supra* note 3 at 203. An intermixture of employment-related hazards with those that are strangers to the work milieu-because of their neutral or personal character—might be regarded as a fourth category.

13. For personal risks, see *supra* note 9.

fall.[14] An injury from that kind of accident may be regarded as compensable **only if** it is shown by competent evidence that a harm-dealing force, present within the perimeter of the fall, created a workplace-generated hazard that **elevated the danger of trauma** from the impact of a worker's idiopathic fall.[15] When equipment is being operated within the perimeter of the fall, the severity of the injury may be viewed as increased by the enhanced equipment-inflicted trauma.[16] The burden is on the claimant to prove that the workplace milieu elevated the degree of danger from a non-compensable fall of the nature sustained by the claimant.[17]

¶ 7 The coffee pot's presence within the perimeter of her fall is not a danger-enhancing hazard. **It did not alter the condition of the premises to make the *locus in quo* more hazardous for an idiopathic fall's victim.** The pot's position (in the school cafeteria) at a nonelevated floor surface where the co-employees may pass by on their way to and from the cafeteria did not operate to create a work-related risk. There is absolutely no nexus here between the appliance's location and the presence of enhanced danger components.[18] A fall upon a coffee maker may, at a maximum, alter the kind of injury that is sustained,[19] but it **neither** heightens the fall **nor** provides greater opportunity for harm, whereas a worker's elevated position above the floor of the *locus in quo* would expose one to danger of a more severe injury from trauma.[20]

¶ 8 This claim suffers from both a **failure of requisite proof** and from an **absence of an acceptable theory of compensability.** The worker here pressed her claim, not on the basis of an increased danger from fall, but rather sought to connect her harm to the coffee pot as a peculiar risk of employment.

¶ 9 Today's pronouncement effectively eliminates from the statutory text the "arising-out-of" employment compensability requirement. *If injury from ordinary objects in the fall's perimeter does, without more, make an idiopathic fall compensable, every idiopathic-fall injury is at once transformed into compensable harm.* This notion runs into collision with Oklahoma's clear statutory exposition that excludes from an employer's

---

14. An idiopathic fall is one "induced by a spontaneous internal condition." *Boardman Company v. Eddy*, 1961 OK 181, ¶ 6, 363 P.2d 821, 823; *Moten v. Chandler Well Serv.*, 1961 OK 125, ¶ 7, 363 P.2d 153, 154 (an idiopathic fall is one "resulting from causes arising out of the mental or physical condition of the employee and not connected with the employment").

15. Awards have been approved by appellate courts where the employee, who suffered an idiopathic fall, was working on a ladder or elevated equipment and sustained a fall from that height, which enhanced the ensuing injury. *Moten, supra* note 14, at ¶ 10, at 154 (idiopathic-fall injury sustained in a fall from a drilling platform would be deemed compensable because the hazard from an idiopathic fall was **increased** by the work-connected necessity of standing on an elevated platform).

16. Compensability of an idiopathic-fall injury is determined by measuring the *force of hazard* from work-connected risks **on the impact of the fall.** The *impact of the fall* is determined by the conditions of the **perimeter** of the fall and the **distance** from which claimant worked above the floor. When the claimant is at a great distance from the floor, it is the work environment that increases the force of trauma on the employee's body.

17. The claimant's lawyer did not view her burden in a similar manner. The lawyer's position was that an indication of **danger peculiar to the workplace would suffice to give support to an award. In other words, the claimant proceeded on the theory that a fall onto an employer's appliance is *per se* compensable.**

18. A fall upon a familiar, ordinary object in the workplace premises fails to show that the ambient dangers at the *locus in quo* stood elevated to a heightened degree the risks from an internally (and spontaneously) induced worker's fall. An idiopathic fall onto some ordinary, common object in the workplace is distinguishable from an injury that occurs to a worker who is positioned at some highly elevated work station or close to some moving or nonmoving machinery peculiar to the workplace environment. The latter objects appreciably elevate exposure to danger from trauma. **The record here is utterly barren of risks producing a heightened danger from work-connected forces.**

19. The "alteration in the kind of injury" means here likely exposure to thermal harm (from heat), as distinguished from a traumatic injury caused by one's fall to the floor.

20. A fall onto a coffee maker at most might add the possibility of a **thermal injury.** An idiopathic fall typically causes harm from a **traumatic impact.**

liability injuries from "personal risks."[21] When work-connected risk element is removed from appellate analysis, as it was done by the court in *Fox v. National Carrier*,[22] the **employer becomes liable for every harm that happens on the job.** *This is so because the unconscious or semi-conscious claimant will in nearly every fall have injured some part of the body.* Today's conclusion is plainly contrary to both the letter of Oklahoma's *compensation law as well as to all of Oklahoma's* pre-*Fox* jurisprudence. In an obvious response to this court's holding in *Fox*, the legislature amended the compensation law in 1986. In the wake of the post-*Fox* changes, a claimant must prove that the risk of an idiopathic-fall injury is **not purely personal, but causally connected to some work-related risk forces that arise out of employment.**[23]

### IV

### TODAY'S RELIANCE UPON AN ABERRATIONAL ABRIDGEMENT OF THE EMPLOYER'S IMMUNITY FROM IDIOPATHIC–FALL LIABILITY IS INCONSISTENT WITH OKLAHOMA'S STATUTORY LAW

¶ 10 Today's reliance on *Larson*[24] for the notion that a worker's idiopathic fall onto **familiar objects** (such as tables and book-

cases) makes on-the-job harm compensable is grossly mistaken. ***Larson's* statement is as incompatible with Oklahoma's post-*Fox* legislation** (enacted in 1986 to rein in this court's emasculation of the **arising-out-of** element of proof) **as it is utterly inconsistent with the weight of extant national jurisprudence.** In short, Larson's statement cannot be viewed as a faithful expression of national authority; it is rather an aberrational abridgement of the employer's immunity from liability for idiopathic falls.

¶ 11 I must continue to be bound by a *stricto sensu* interpretation of explicit legislative exclusion of personal risks as a source of compensation liability.[25]

### V

### THE COURT OVERLOOKS THAT THE POSITIONAL-RISK UNDERPINNINGS OF COMPENSATION LIABILITY STAND REJECTED BY OKLAHOMA'S EXTANT CASELAW

¶ 12 The claimant argues the presence of the coffee pot in an area not readily accessible to the public strengthens her position that the accident in contest was causally connected to employment. Her argument follows the compensation law's positional-risk theory.[26] The latter, which stands abrogated

21. See the provisions of 85 O.S.Supp.1997 § 3 (10), supra note 5.

22. 1985 OK 91, ¶ 12, 709 P.2d 1050, 1053. *Fox* held (a) that every employee in travel for the master remains in the course of employment throughout the trip–except only during a departure on a purely personal errand–and (b) that every injury which occurs in travel, whether attributable to a work-related or personal hazard, is compensable. *Id.* at 1053.

23. See the provisions of 85 O.S.Supp.1997 § 3 (10), supra note 5; *Odyssey, supra* note 5 at ¶ 20, at 313; *Burns, supra* note 3, at ¶ 5, at 291 ("The 'arising-out-of-employment' element of the claim requires that an injury be employment-related, as opposed to one stemming from a purely personal risk .... the record must show that ... [the harm] was causally related to the risks incident to his mission for the employer"); 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 9.01(1), at 9–2 (1999) ("the basic rule ... is that the effects of ... [an idiopathic] fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near

machinery or sharp corners, or in a moving vehicle"].

24. The court relies on *Larson, supra* note 9, § 9.01[2](2010), which states in pertinent part that "idiopathic falls onto such familiar household objects as tables and bookcases are compensable." For this notion Larson cites decisions from New York, Georgia, West Virginia, Florida, Utah, and Missouri.

25. Fidelity to this State's statutory law requires that we reject out-of-hand Larson's inclusion of holdings (from a small number of jurisdictions) to support the notion that idiopathic falls upon "familiar objects" are compensable.

26. "Under the positional risk doctrine, an injury may be said to arise out of employment if it would not have occurred but for the fact that the conditions or obligations of the employment placed claimant in the position where he was injured by a neutral force, meaning by "neutral" neither personal to the claimant nor distinctly associated with the employment." A. LARSEN, The Positional Risk Doctrine in Workmen's Compensation, 1973 DUKE L.J. 761. [emphasis added]. *Burns, supra* note 3 at 291.

by the teachings of *American Management Systems, Inc. v. Burns,*[27] is no longer available for establishing an injury's causal nexus to the hazards of employment.

¶ 13 The 1986 amendment of § 3(7) [now § 3(10) ],[28] which requires the source of a compensable injury to be work-related,—*i.e.,* to be one that does not stem from a purely personal risk—plainly contravenes this court's teachings of yore in *Fox.*[29] Claimants can no longer rely on the positional-risk theory. Its re-adoption today would allow plainly ordinary ambient risks to be combined with idiopathic falls for creating an accident's compensability.[30] The law now demands that the risk responsible for a claimant's injury be causally connected to the work being performed. If the risk stems from **neutral** or **personal** sources, their presence must exceed the ordinary forces of hazards to which the general public is exposed. Whether Flanner, when injured, was *working near* the offending coffee maker is of no consequence. What makes a difference is the absence of forces within the perimeter of her fall which operated to increase the severity of harm from the fall she sustained.

## VI

### SUMMARY

¶ 14 An idiopathic fall at an employee's workplace is not compensable unless it be shown that work-generated risks in interplay with the internally (and spontaneously) induced fall **elevated the danger** of exposure to harm. The **burden** was on this claimant to show that danger-increasing forces were unleashed by the presence of the coffee maker in the perimeter of Flanner's fall. No such showing has been attempted. In this case scenario the coffee maker posed no more than an ordinary hazard of claimant's job milieu—perhaps an **opportunity of including** exposure to thermal harm. This falls short of elevating *the severity of injury*

from the impact of the fall. There is hence no **competent evidence** to support compensability based on heightened dangers from work-connected risks at the *locus in quo.*

¶ 15 The court's reliance on Larson's aberrational abridgement of an employer's immunity from liability for idiopathic falls to include all falls onto familiar workplace objects is inconsistent with Oklahoma's explicit statutory mandate that calls for exclusion from compensability of "personal risks."

¶ 16 I cannot countenance today's adoption of a distorted definition for **enhanced workplace risks.** The court's return to the teachings of *Fox* jurisprudence **will allow every injury by fall occasioned by a spontaneous internal systemic failure to become compensable, thus effectively scuttling the statutory standards. The latter require an injury to arise out of claimant's employment and stem from nonpersonal risk sources.**

¶ 17 There is here no record support for the court's conclusion that the trial judge erred in refusing to allow recovery. I would sustain her order denying compensation.

---

27. 1995 OK 58, 903 P.2d 288.

28. For the terms of 85 O.S.Supp.1997 § 3 (10), see *supra* note 5.

29. For the *Fox* holding, see *supra* note 22.

30. The legislative intent in amending the terms of 85 O.S.1981 § 3 (10) was doubtless to require

that the source of the employee's injury be from a work-related, rather than a purely personal, risk. No longer may an injury be viewed as compensable solely because the worker, while in the course of employment, came to be exposed to some risk of harm that is not shown to be work-connected.