Appeal of Arlis William TUCKER of the Order Sustaining the Order of Revocation Dated July 6, 1973, Case No. 370706751, Batch 73–182.

**No. 47009.**

Court of Appeals of Oklahoma,
Division No. 2.

July 1, 1975.

Released for Publication by Order of Court
of Appeals July 24, 1975.

Stephen G. Fabian, Jr., Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellant Dept. of Public Safety.

Luttrell, Pendarvis & Rawlinson, Norman, for appellee Arlis William Tucker.

BACON, Judge.

On June 23, 1973, appellee was arrested and charged with driving while under the influence of alcohol. The arresting officer requested that appellee submit to either a blood or breath test to determine the amount of appellee's blood alcohol content. Appellee refused to submit to either test. The Department of Public Safety [appellant] subsequently gave notice to appellee that his driver's license was to be revoked for a period of six months for refusing to submit to a blood alcohol test. Appellee requested a hearing before the Oklahoma Commissioner of Public Safety pursuant to 47 O.S.1971 § 754.[1] Pending the outcome

of this hearing the revocation of appellee's license was stayed. The hearing resulted in a finding by the Commissioner of Public Safety that the original revocation order should be sustained. Appellee then appealed to the District Court of Cleveland County, Oklahoma, under 47 O.S.1971 § 755.[2] The cause was then tried *de novo* to the court which set aside the revocation order and reinstated appellee's license upon finding "the officer did not have reasonable grounds to believe that the applicant [appellee] had been driving or was in actual physical control of a motor vehicle upon the public highway while under the influence of alcohol or intoxicating liquor."

The Department of Public Safety is now appealing and urges as its sole proposition of error:

"The Court erred in finding that what the trooper observed was not sufficient to show that the appellee was driving a motor vehicle while under the influence of alcohol."

In the district court, appellant argued and the journal entry reflected that the issue contested was whether the officer had reasonable grounds to believe appellee was under the influence. However, the issue to be tried was not whether the officer had reasonable grounds to believe that appellee

---

1. 47 O.S.1971 § 754 reads:

"Upon the written request of a person whose privilege to drive has been revoked or denied the Oklahoma Commissioner of Public Safety shall grant the person an opportunity to be heard within ten days after the receipt of the request, but the request must be made within thirty days after the revocation. The hearing shall be before the Oklahoma Commissioner of Public Safety or his authorized agent, in the county wherein the alleged events occurred for which the person was arrested, unless the Oklahoma Commissioner of Public Safety or his authorized agent and the person agree that the hearing may be held in some other county. The hearing shall be transcribed and its scope shall cover the issues of whether the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of alcohol or intoxicating liquor, whether the person was placed under arrest

and whether he refused to submit to the test or tests. Whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test or tests shall not be an issue. The Oklahoma Commissioner of Public Safety or his authorized agent shall order either that the revocation or denial be rescinded or sustained." See footnote 3, infra, for amended text.

2. 47 O.S.1971 § 755, amended by 2 Okl.Sess. Laws '75, ch. 119 (May 13, 1975), reads:

"If the revocation or denial is sustained the person whose license or permit to drive or nonresident operating privilege has been revoked or denied may file a petition for appeal in the [county] court in the manner provided in 47 O.S., Section 6—211, and the proceedings upon said appeal shall be the proceedings prescribed by 47 O.S., Section 6—211."

was so driving, but should have been whether the evidence was sufficient to show appellee *was in fact* driving while under the influence of alcohol. Section 754 limits the scope of the hearing to three issues: (a) whether the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of alcohol or intoxicating liquor; (b) whether the person was placed under arrest; and (c) whether he refused to submit to the test or tests.[3] Parts (b) and (c) are undisputed in the present case. Subsequent to the trial in the present case, the Oklahoma Supreme Court handed down Application of Baggett, Okl., 531 P.2d 1011 (1974) wherein the court rejected the argument that "the reasonable belief of the officer" is the criterion for determining whether the license revocation should be rescinded or sustained. The court went on to point out that one of the issues to be tried (under § 754) shall be "whether the person had been driving . . . while under the influence"

■ Where a trial court reaches the right result but for the wrong reason, that judgment will be affirmed. *McDaniel v. McCauley*, Okl., 371 P.2d 486 (1963). Inherent in the trial court's finding that the officer did not have reasonable grounds to believe appellee was driving while under the influence is a finding that the evidence was insufficient to prove appellee was in fact so driving. We will therefore affirm the judgment if the evidence is insufficient to show appellee was in fact driving under the influence.

To examine the evidence and decide the issue of whether appellee *was in fact* driving a vehicle while under the influence requires an intimate look at the facts of the present case.

On June 23, 1973, appellee was driving his brother's car on Interstate Highway 35 from Purcell through Norman at about 9:20 p.m. Appellee noticed that the Oklahoma Highway Patrol had his brother's truck stopped off an I-35 exit near Norman. Appellee took the next exit and came back to the vicinity of where his brother's truck was stopped. Appellee parked on a service roadway adjacent to I-35 and walked 40 to 70 feet across a grassy median to where the patrolmen were parked. There were two patrol cars present and appellee's brother was in the lead car with a trooper. Appellee approached Officer West, the patrolman from the back-up patrol car and was told appellee's brother had been arrested. Ap-

---

3. This case arose in 1973. Since then, 47 O.S.1971 § 754 has been amended by the 1975 session of the Oklahoma Legislature (ch. 119, May 13, 1975), changing the number and character of the issues to be tried at the revocation hearing. The section as amended now reads:

"Upon the written request of a person whose privilege to drive has been revoked or denied the Oklahoma Commissioner of Public Safety shall grant the person an opportunity to be heard within thirty (30) days after the receipt of the request, but the request must be made within thirty (30) days after the notice of the revocation is given in accordance with Section 2—116 of Title 47, Oklahoma Statutes. Such a request shall also operate to stay the revocation or denial by the department until a hearing is held unless the person is under suspension or revocation for some other reason. The hearing shall be before the Oklahoma Commissioner of Public Safety or his authorized agent, in the county wherein the alleged events occurred for which the person was arrested, unless the Oklahoma Commissioner of Public Safety or his authorized agent and the person agree that the hearing may be held in some other county. The hearing shall be recorded and its scope shall cover the issues of whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways, streets or turnpikes while under the influence of alcohol or intoxicating liquor, whether the person was placed under arrest, whether he refused to submit to the test or tests, and whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test or tests. The Oklahoma Commissioner of Public Safety or his authorized agent shall order either that the revocation or denial be rescinded or sustained."

pellee and Officer West talked for approximately 3 to 5 minutes about appellee driving his brother's truck on home to relieve the officers of the problem of having to deal with it. Officer West then went to the lead patrol car, talked with the other trooper, and both officers returned back to where appellee was waiting. The other officer inquired if appellee had had anything to drink recently. Appellee answered that he had just eaten a barbecue dinner in Purcell where he consumed three 12-ounce cans of beer. The lead officer then understated "I don't believe you should have stopped." Officer West then placed appellee under arrest for drunk driving and took him to jail. Appellee was read his Miranda rights and was informed of the substance of the Oklahoma implied consent license revocation provisions. Indignant that his original act of cooperation had turned sour, appellee refused to submit to a chemical test for blood alcohol content, whereupon he was placed in jail. At the jail Officer West was unable to make a camera function that was normally used to film DWI case suspects. Appellee says he performed the "walk the line" test three times and passed each satisfactorily. Officer West also filled out a report at the jail, presumably noting the circumstances.[4]

During the revocation hearing before the trial court, only appellee and Officer West testified. Officer West was asked:

"Okay, now, would you tell the Court exactly why or what you observed about Mr. Tucker that led you to believe that he was under the influence of alcohol."

To which Officer West replied:

"I observed unsteadiness in walking, I observed a slight impediment in his speech, slightly slurred. I noticed his eyes appeared to be glassy, and I noticed an odor of alcoholic beverage on his breath, the odor of alcohol on his breath."

Appellee testified he had broken both his ankles about "a year and a half ago" and had so advised Officer West while at the jail. He testified that he did not stumble when he walked from his car across the uneven grassy median to Officer West's car, but if West thought he did, it was because of his broken ankles. He said his ankles caused him problems when walking on other than smooth, flat surfaces. Appellee's testimony that he walked normally at the jail while "walking the line" was not disputed by Officer West.

■■■■ Appellant carries the burden and must prove by a "preponderance of the evidence" that appellee "had been driving . . . while under the influence." *Application of Baggett, supra.* By a preponderance of the evidence it is meant that a fact is more probably true than not true. *Peyton v. McCaslin,* Okl., 417 P.2d 316 (1966). So we are faced with deciding whether the foregoing evidence more probably shows it true than untrue that appellee had been driving while under the influence.

■■ In *Luellen v. State,* 64 Okl.Cr. 382, 81 P.2d 323 (1938) the court defined "driving under the influence of intoxicating liquor" as follows:

"[T]hat if intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

4. Though a continuance was granted to appellee in order to obtain this report, appellee did nothing to procure it until the morning of the trial, at which time appellant objected to the same. The contents of the report never made their way into the record. It would seem this report might have shed some light on exactly what took place at the jail, since the officer's memory as to what transpired there was somewhat vague.

In the present case, the most that can be found from the evidence is that appellee consumed enough alcohol to slightly affect his speech and possibly leave a glassy appearance to his eyes. Even assuming alcohol was the sole cause of his speech impairment and glassy eyes, the evidence does not show his "nervous system, brain or muscles" were impaired to the extent his ability to prudently, cautiously and with reasonable care *operate his vehicle was affected*. In other words, totally lacking from the evidence is any showing as to what extent if any the alcohol consumed by appellee affected or impaired his driving ability. To the contrary, the evidence shows Officer West observed appellee drive up and park his vehicle without any apparent problem. Unlike most cases where the officer observes erratic driving or where there has been an accident, the officer in the present case did not testify nor was there any other evidence which shows that appellee's ability to drive was impaired. There is no evidence that appellee was discourteous or anything but cooperative. Thus we can only conclude that the evidence was insufficient to show by a preponderance that appellee had been driving while under the influence, as appellant is required to show under § 754.

Affirmed.

NEPTUNE, P. J., and BRIGHTMIRE, J., concur.