2010 OK 89

**HAC, INC., d/b/a Homeland Stores, and Associated Wholesale Grocers, Inc. (Own Risk # 19048), Petitioners,**

v.

**Robert Shane BOX and The Workers' Compensation Court, Respondents.**

**No. 107,786.**

Supreme Court of Oklahoma.

Dec. 14, 2010.

**611**

Charles G. Braun, B. Clark Taylor, Oklahoma City, OK, for petitioners.

W.C. Doty, Norman, OK, for respondents.

TAYLOR, V.C.J.

¶ 1 The dispositive question presented in this appeal is whether the Workers' Compensation Court erred in finding the claimant was an innocent victim of "horseplay." We conclude that the trial judge's finding of fact that Robert Shane Box was an innocent vic-

tim in the January 22, 2009 horseplay incident is not supported by competent evidence. We hold the three-judge panel erred as a matter of law in finding that the trial judge's order was not against the clear weight of the evidence.

## I. Facts and Proceedings

¶ 2 Robert Shane Box (Box) stocked shelves at the Homeland grocery store in Madill, Oklahoma. On January 22, 2009, seventeen year old Box injured his right arm in a scuffle with a co-employee at the Homeland store.

¶ 3 Box filed a workers' compensation claim alleging injury to his right arm and elbow arising out of and in the course of employment on January 22, 2009. The employer, HAC, Inc. d/b/a Homeland (Homeland), denied that the claim arose out of Box's employment and asserted that the cause of the injury was "horseplay." 85 O.S. 2001, § 11(A)(4).

¶ 4 The trial judge of the Workers' Compensation Court conducted an evidentiary hearing on Box's claim for benefits for temporary total disability, permanent partial disability, disfigurement, and continuing medical maintenance. The trial judge heard testimony from only one witness, the claimant Box. Describing the injurious incident on direct examination, Box testified that he and an assistant manager were bringing the products to the front of the shelves and aligning them, referred to as facing the shelves, on aisle 10; a co-worker, Jonathan Glenn, who was working on aisle 9, came to the end of aisle 10 and threw a roll of toilet paper at Box which hit his head; the assistant manager told Box to forget it and don't worry about it; Box ran to the co-worker on aisle 9 and yelled his name; Box and the co-worker engaged in a scuffle; the co-worker put his arms around Box from behind; as Box struggled to get away from the co-worker, his feet became tangled with the co-worker's feet; both the co-worker and Box fell to the floor on top of Box's right arm; and the fall seriously injured Box's right arm and elbow. Another Homeland employee drove Box to the emergency department at Integris Mar-

shall County Medical Center where he was referred to Norman Regional Hospital. Box underwent surgical treatment for his fractured right arm at Norman Regional Hospital, and he had physical therapy in Ardmore, Oklahoma.

¶ 5 The trial judge admitted into evidence the medical reports offered by Box and Homeland. Medical documents put into evidence by Homeland indicate that Box told the medical providers that he was rough housing and just messing around with a co-employee when he injured his right arm and elbow. The two medical reports admitted into evidence concluded Box had been temporarily disabled from the time of the incident until April of 2009, and one concluded Box had 7% permanent impairment to his right arm while the other concluded Box had 47% permanent impairment.

¶ 6 The trial judge found that "claimant (from evidence) was an innocent victim and therefore excused from 85 O.S. § 11." The trial judge awarded Box temporary total disability and 35% permanent partial disability to the right arm (elbow). Homeland sought review by a three-judge panel of the Workers' Compensation Court. The three-judge panel found the award was not against the clear weight of the evidence nor contrary to law and affirmed the trial judge. Homeland sought appellate court review. The Court of Civil Appeals found the award was supported by an inference that Box tried to escape from the co-worker and thus was an innocent victim and affirmed the Workers' Compensation Court. We previously granted Homeland's petition for writ of certiorari.

## II. Standard of Review

 ¶ 7 A trial judge of the Workers' Compensation Court may award workers'

compensation benefits based upon a preponderance of the evidence. 85 O.S.Supp.2005, § 1.1(B). A three-judge panel of the Workers' Compensation Court may reverse or modify the trial judge's decision only if it determines that the decision is against the clear weight of the evidence or contrary to law. 85 O.S.2001, § 3.6(A). An appellate court will not disturb an award entered by the trial judge of the Workers' Compensation Court and affirmed by a three-judge panel if the trial judge's findings of fact are supported by competent evidence and they are not clearly against the weight of the evidence.[1] *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, ¶ 7, 653 P.2d 201, 203. Whether an employee's injury arises out of employment presents an issue of fact to be determined by the trial judge, but where the proof is undisputed and no conflicting inferences may be drawn from the undisputed proof, the question is one of law. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798. An appellate court will vacate, as a matter of law, the three-judge panel's order affirming the award if the evidence is undisputed and it does not support the award. *Id.*

## III. The "Horseplay" Rule

 ¶ 8 An employer is generally required to pay workers' compensation benefits for injury sustained by an employee that arises out of and in the course of the employment. 85 O.S.2001, § 11(A). "In the course of employment" relates to the time, place, or circumstances of the injury. *American Management Systems, Inc. v. Burns*, 1995 OK 58, n. 3, 903 P.2d 288, 290, n. 3. "Arises out of employment" relates to the causal connection between the injury and the risks incident to the employment. *Id.* at n. 4.

1. In an appeal from an order, decision, or award entered by the Workers' Compensation Court, the appellate courts review questions of law. 85 O.S.2001, §§ 3.6(C) and 26(B). Section 26(B) provides that an order, decision, or award entered on an employee's claim by the Workers' Compensation Court shall be final as to all questions of fact, and except as provided in § 3.6, it is final as to all questions of law. Section 3.6(C) provides that an order, decision, or award entered by the Workers' Compensation Court is final and conclusive upon all questions within its

jurisdiction unless an action is commenced in this Court to review such order, decision, or award. Effective November 1, 2010, the Oklahoma Legislature added the following pertinent language to § 3.6(C):

The Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:

. . .

4. The order or award was against the clear weight of the evidence.

2010 Okla. Sess.Laws, ch.403, § 1.

"Arises out of employment" contemplates a causal relationship between the act engaged in at the time of injury and the requirements of the employment. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120 at ¶ 5, 653 P.2d at 202–203.

¶ 9 Our early jurisprudence determined that injury caused by willful prankish behavior of employees at the work site does not "arise out of employment." *Willis v. State Indus. Comm'n*, 1920 OK 145, 190 P. 92. *Willis* fashioned the "horseplay rule" as follows: "if a workman is an active participant in what has been denominated 'horse-play,' he is not entitled to compensation, but if, while going about his duties he is a victim of another's prank, to which he is not in the least a party, he should not be denied compensation." 1920 OK 145 at ¶ 18, 190 P. at 94 (citations omitted). In *J.C. Hamilton Co. v. Bickel*, 1935 OK 896, *Syllabus by the Court*, No. 2, 49 P.2d 1065, this Court ruled that where a claimant participates in horseplay only to get free of the horseplay, the participation will not be considered to be active or voluntary. Thereafter, *Terry Motor Co. v. Mixon*, 1961 OK 60, ¶ 0, *Syllabus by the Court*, No. 1, 361 P.2d 180, decided that an injury caused by a prank or horseplay of a co-worker will be deemed to "arise out of employment" unless there is competent evidence showing that the injured employee voluntarily participated in the prank or horseplay.

■ ¶ 10 In 1997, the Legislature codified the "horseplay rule" and implicitly rejected the presumption that an injury resulting from horseplay "arises out of employment." 1997 Okla. Sess. Laws, ch. 361, §§ 1 and 5. The "horseplay rule" is set out in 85 O.S. 2001, § 11(A)(4),[2] which provides in pertinent part:

A. Every employer subject to the provisions of the Workers' Compensation Act shall pay . . . for the disability or death of an employee resulting from accidental personal injury sustained by the employee arising out of and in the course of employment, without regard to fault as a cause of such injury, and in the event of disability only, except as follows:

. . .

4. Except for innocent victims, an injury caused by a prank, horseplay, or similar willful or intentional behavior.

The burden of proof is set out in 85 O.S.2001, § 1.1(B), which requires that the "burden of proof, by a preponderance of the evidence, shall be on the party requesting benefits or relief pursuant to the provisions of the Workers' Compensation Act unless otherwise specifically provided for by law."[3] These statutes do not allow a presumption that the injured worker was an innocent victim of horseplay. Rather under these statutes, an award of workers' compensation for injury caused by a co-employee's horseplay must be supported by proof that the injured employee was an innocent victim.

■ ¶ 11 This Court has not decided in a published opinion what proof will support a finding that an injured worker was an innocent victim of horseplay under the 1997 amendments. Our latest opinion addressing injury caused by work place horseplay adhered to our early jurisprudence without mention of the 1997 amendments. *Canida v. Technotherm*, 2000 OK 83, 16 P.3d 1127. In *Canida*, we recognized that injury caused by horseplay done independently of and disconnected from the performance of any employment duties does not arise out of employment, 2000 OK 83, at ¶ 3, 16 P.3d at 1129, and decided that an injured employee who voluntarily participates in horseplay is not entitled to workers' compensation. 2000 OK 83 at ¶ 8, 16 P.3d at 1130. Today, we determine that an employee who is injured by a co-employee's prank or horseplay is an innocent victim and entitled to workers' compensation under 85 O.S.2001, § 11(A)(4) if there is proof that the injured employee did not initiate the prank or horseplay and did not voluntarily participate in the prank or horseplay, or that the injured employee's only involvement in the horseplay incident was

---

2. Although 85 O.S.2001, § 11 has been amended, there has been no change to the "horseplay" rule in § 11(A)(4).

3. Although 85 O.S.2001, § 1.1 has been amended, the burden of proof language has not been changed.

exclusively directed at escaping or avoiding the horseplay.

¶ 12 Doubtless the 1997 legislative codification of the "horseplay rule" came in response to this Court's opinion in *Darco Transportation v. Dulen*, 1996 OK 50, 922 P.2d 591, which presumed that an action could be both horseplay and arise out of employment. To the extent that the *Darco* opinion has not been deemed overruled by the 1997 legislation, we hereby expressly overrule the decision insofar as it is in conflict with this holding today.

## IV. The Evidence

¶ 13 The Workers' Compensation Court, as the trier of fact, determines the credibility of witnesses, weighs the evidence, and draws reasonable inferences from the facts and circumstances in evidence. *Terry Motor Co. v. Mixon*, 1961 OK 60 at ¶ 6, 361 P.2d at 182. In determining whether an injury arose out of employment, the Workers' Compensation Court considers the record in its entirety and resolves issues of fact based on any one of the conflicting inferences that reasonable people may draw from the facts and circumstances in evidence. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120 at ¶ 7, 653 P.2d at 203.

¶ 14 On certiorari, Homeland argues that Box's testimony proves he voluntarily participated in the horseplay and that there is no competent evidence showing that Box was an innocent victim of his co-employee's horseplay. Homeland further argues that all the facts in this case came directly from the injured employee's testimony, that he admitted he was injured due to his rough housing, and that there was no evidence supporting the Court of Civil Appeals' inference that Box was trying to escape from his co-employee's horseplay. Having carefully perused the evidence in the appellate record, we agree with Homeland for the reasons set out below.

¶ 15 The fact that the injurious incident was horseplay initiated by a co-employee is not disputed, and the facts and circumstances of the horseplay incident are not in dispute. Box testified, on direct examination, at pages 11 through 15 of the transcript of trial proceedings had on August 13, 2009, before the Honorable Bob Lake Grove, about the horseplay incident:

A. We were facing on aisle 10 and Jonathan Glenn, employee, came over to the aisle and he threw a toilet paper roll and that's when I ran over there but my manager, my assistant manager, Rhett he said for me to not worry about it.

And when I ran over there that's when he—Jonathan grabbed me and he flipped me around and that's when our feet got tangled up and we fell over.

Q. When you fell over, did you extend a body part?

A. I put my arm out. That's when the injury happened.

. . .

Q. Now let's go back up a little bit and clear some things up. You were facing one aisle with your general or assistant manager?

A. Assistant manager.

Q. And what's his name?

A. Rhett.

Q. Is he here today?

A. No.

Q. So you're in the aisle with him and this Jonathan comes around the corner and throws something at you?

A. Yes.

Q. Did he hit you?

A. Yes.

Q. Was it hard?

A. No.

Q. So you left the aisle and went to the aisle where he was?

A. Yes.

Q. Did you touch him?

A. No.

Q. Did you say anything to him?

A. I yelled his name and ran over there to him.

Q. Now when you got to that aisle and you said something to him, whether it's his name or something else, did he grab you or did you grab him?

A. He grabbed me.

Q. How did he grab you initially?

A. He put his arms around me like that. (Indicating)

Q. And did he somehow get you twisted around?

A. Yes.

Q. How did he get you twisted around? How did your body end up being before you fell?

A. My back was against his stomach.

Q. He kind of had you in a bear hug backwards?

A. Yes.

Q. Is he bigger than you?

A. Yes.

Q. Is he taller or is he just thicker?

A. He's not taller but he's thicker.

Q. Is he older than you?

A. No.

Q. You guys are about the same age?

A. He's a year under me.

Q. In school?

A. Yes.

Q. You have to speak up just a little louder. You are starting to get quieter again. When he had you in a bear hug, your back is to his stomach. Correct?

A. Yes.

Q. Did you try and get away from him?

A. Yes.

Q. Were you worried about how hard he was squeezing you?

A. He had me pretty tight and he was shaking.

Q. So he shook you?

A. Yes.

Q. When you were trying to get away from him, what happened with your feet?

A. They wrapped around and we both just fell. We both fell on my arm, both of our weight.

Q. Did he fall on to you as well?

A. Yes.

Q. So it was a combination of you and him falling on to your arm?

A. Yes.

Q. If it weren't for him grabbing you and shaking you, would you have fallen?

A. No.

¶ 16 On cross-examination, Box again repeatedly testified that he had abandoned his assigned work and was messing around with a co-employee when the injury occurred. At pages 24 and 25, Box testified:

Q. Now after Mr. Glenn threw the toilet paper your assistant manager, Rhett Jones, was present.

A. Yes.

Q. In fact, he was present at the time that this incident started. Correct?

A. Yes.

Q. And he told you to let it go and not make trouble. Correct?

A. Yes.

Q. Those were his words?

A. Yes.

Q. Your assignment at that point and time was to continue to face the shelves. Correct?

A. Yes.

Q. And continue to face the shelves in aisle 10. Correct?

A. Yes.

Q. Instead you disregarded what the assistant manager said and you ran to aisle 9 after Jonathan Glenn. Correct?

A. Yes.

Q. Now, when you ran after him you weren't mad, were you?

A. No.

Q. And he wasn't mad.

A. No.

Q. I think you said at the deposition that you were just messing around. Is that correct?

A. Yes, I wasn't mad at him.

Q. You were just—you used the term "I was just messing around". Correct?

A. Yes.

At page 26, Box testified:

Q. And isn't it true that on your MySpace page and on their MySpace page, however that works, you told some of your friends that this accident happened when you were roughhousing and wrestling. Correct?

A. Yes.

At page 28, Box testified:

Q. The truth of the matter is you left your work station to mess around with a friend. Is that correct?

A. Yes.

At page 33, Box testified on recross examination:

Q. You went to aisle 9 to, as you stated at the deposition, mess around with your friend. Correct?

A. Yes.

¶ 17 This undisputed testimony shows that once the co-employee initiated the horseplay by throwing the roll of toilet paper, Box left his work station against his supervisor's instruction and actively joined in the horseplay by pursuing the co-employee. Box's testimony that he tried to get away from the co-employee's bear hug is not proof that Box's only involvement in the horseplay was exclusively directed at escaping or avoiding the horseplay. From Box's testimony, his behavior can only be viewed as voluntary participation in horseplay that was wholly independent of and disconnected from his employment duties. There is nothing in Box's testimony that would give rise to an inference that Box was an innocent victim in the horseplay.

¶ 18 The documentary evidence supports the testimony that Box voluntarily participated in the horseplay initiated by his co-employee. The medical report that Box offered in support of his claim stated that Box told the medical examiner that his arm was injured when a co-worker tripped him and they both fell on top of his right arm. In addition to a medical report, Homeland submitted the intake form that Box completed when he was first examined at the medical center in Marshall County and the Norman Regional Hospital emergency department's notes. On the intake form, Box, in his own words, wrote:

Me and some employees were fasing on isle 10 when Jonathen Glenn, an employee, had thrown a roll of paper towel at me. He was on isle 9 I guess, and had come to the end of isle 10 when he had thrown it. My assistant grocery manager (Rhett) was there by me and had said something like

"Don't worry about it" or "Don't do it." I then went to isle 9 where he was and that's where we were rough housing with each other when he had grabbed me and we tripped over each other causing the accident on my arm.

The Norman Regional Hospital emergency department report for the three days following the incident, January 23–26, 2009, stated:

HISTORY OF PRESENT ILLNESS: The patient is a 17–year–old male with a past medical history that is grossly negative that presents as a transfer from Madill with concerns of a right supracondylar open fracture. States that [it] occurred about 10 o'clock this evening, that he was at work and was messing around with one of [his] friends prior to close, and they tripped and fell. . . .

¶ 19 We have canvassed the entire record for evidence that supports the trial judge's finding that Box was an innocent victim of a co-employee's horseplay. Box presented no evidence to show he did not voluntarily engage in the horseplay. Those who witnessed the horseplay incident were not called to testify, such as the assistant grocery manager who was working at aisle 10 with Box when the horseplay began nor any other Homeland employee. Near the time of the injury, Box stated that he was rough housing with a co-employee when he was injured. At trial, Box testified that he left his work station and pursued the co-employee. We have no conflicting evidence from which reasonable people can draw an inference that Box was an innocent victim of his co-employee's horseplay. We conclude that the trial judge's finding of fact that Robert Shane Box was an innocent victim in the January 22, 2009 horseplay incident is not supported by competent evidence. We hold the three-judge panel erred as a matter of law in finding that the trial judge's order was not against the clear weight of the evidence. Because there is no proof that Robert Shane Box was an innocent victim injured by his co-employee's horseplay, Box's injury is not compensable under the workers' compensation statutes and his claim must be denied.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE**

THREE–JUDGE PANEL OF THE WORKERS' COMPENSATION COURT VACATED; CAUSE REMANDED TO THREE–JUDGE PANEL OF THE WORKERS' COMPENSATION COURT WITH INSTRUCTIONS TO DENY THE CLAIM.

EDMONDSON, C.J., TAYLOR, V.C.J., and HARGRAVE, KAUGER, WATT, WINCHESTER, and REIF, JJ., concur.

COLBERT, J., dissents.