2011 OK CIV APP 31

**MOBILE MINI, INC. and Liberty Mutual Insurance Company, Petitioners,**

v.

**Mikeal C. DUGGER and The Oklahoma Workers' Compensation Court, Respondents.**

No. 107952.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 24, 2011.

Linda S. Foreman, Adelson, Testan, Brundo & Jimenez, Oklahoma City, OK, for Petitioners.

Bret A. Smith, Rick Paynter, The Law Office of Bret A. Smith, Muskogee, OK, for Respondent.

JOHN F. FISCHER, Judge.

¶1 Employer Mobile Mini, Inc., seeks review of the trial court's order finding that Claimant Mikeal C. Dugger sustained a compensable injury and awarding temporary total disability (TTD) benefits. Based on our review of the record and applicable law, we sustain the order.

## BACKGROUND

¶2 The sixty-two-year-old Claimant worked as a truck driver for Employer, delivering and retrieving large, metal storage containers. He filed a Form 3 alleging that on April 6, 2009, he sustained work-related injuries to his head, neck ears and eyes resulting from a blow to the head while retrieving a storage container from one of Employer's customers. Employer admitted that Claimant was injured but denied that his employment was the major cause of those injuries. Claimant had no memory of how he was injured, and no one witnessed the injury as it occurred.

¶3 At the time he was injured, Claimant had worked for Employer for over eight years. He was Employer's lead driver and by all accounts a reliable and conscientious employee. Claimant's tractor-trailer was equipped with a GPS device that enabled Employer to track the vehicle's movement and compile reports regarding Claimant's assigned routes. Employer stipulated at trial that the GPS report and trip log for the date of the incident showed that Claimant made all of the stops on his daily trip sheet and returned back to Employer's parking lot "[w]ith no deviations of any sort."

¶4 Claimant testified that he reported to work at about 5:00 a.m. on the date of his injury, picked up his daily trip sheet, and began the pick-ups and deliveries along the assigned route. There were four stops on Claimant's trip sheet. It was undisputed that it was unusually windy that day.

¶5 Claimant's last scheduled stop for the day was Fiber Pad, a business in an industrial park with which Claimant was familiar through prior deliveries. Claimant was to retrieve a container from Fiber Pad and return it to Employer's lot.

¶6 On his arrival at Fiber Pad, Claimant checked in at the office to ask the manager which container he was supposed to pick up. He remembered loading the container on the trailer and starting to drive away but then, because of the wind, stopping to strap down the container. To tighten the straps, he used a bar that was kept in tool box underneath the back end of the trailer. Claimant testified that the last thing he remembered before his injury was stooping down to return the bar to the tool box. The GPS showed that Claimant returned to Employer's parking lot at approximately 12:26. He had no memory of driving back there.

¶7 There was no direct evidence or eyewitness testimony of the injury-causing event. The trial court questioned Claimant at length regarding the usual steps that were involved in the task of strapping down a container. Claimant explained that he would lower the trailer, throw the tie-down straps over the trailer and tighten them down with the strap-tightening bar. He would then return the bar to the toolbox and climb into the truck's cab.

¶8 The GPS trip log established that Claimant arrived at Fiber Pad at 11:42 a.m. The manager of Fiber Pad testified that he spoke with Claimant and then, because he was interested in the process, he watched while Claimant successfully loaded the storage container onto the trailer. He did not observe anything unusual about Claimant's appearance or behavior. He described Claimant as easy to talk to and pleasant.

Before he went back into his office, the Fiber Pad manager saw Claimant drive to another part of the complex, and then stop and climb down from the truck. He stated that he thought that Claimant was going to strap down the storage container, because he had not done so at the time he loaded it onto the trailer. Later, when the Fiber Pad manager was showing Employer's dispatcher the packed-down gravel road where Claimant had stopped the truck, he noticed a fresh ridge or "line of loose gravel" approximately two inches in height and ten feet long. He also saw a "bright red liquid substance" on the packed-down gravel.

¶ 9 Employer's manager/dispatcher testified and provided further details regarding the events on the date of Claimant's injury. When the dispatcher returned from lunch, she found Claimant in the parking lot. She saw that the back of Claimant's head was matted with dried blood and there was blood on his shirt. She described Claimant as incoherent, and stated that Claimant did not know what had happened to him. Less than thirty minutes after seeing Claimant, Employer's dispatcher was at Fiber Pad, attempting to determine what had happened. The Fiber Pad manager directed her to the area where he had last seen Claimant. On the gravel road, Employer's dispatcher noticed what appeared to her to be a "big puddle of blood" that "was still wet." She took pictures of the scene.

¶ 10 Employer's branch manager testified that he became aware of Claimant's injury around the noon hour:

> [The dispatcher] came in and came running into my office saying we needed to send [Claimant] to the doctor, and I didn't really understand what she said at first, came out of my office and [Claimant] had walked into the sales room and he looked kind of glassy-eyed, disoriented and there was blood in his hair and I noticed blood down the side of his neck and I went over to him and asked him what had happened and he basically said I don't know.

Employer's manager then examined Claimant's truck. The storage container was properly secured. He found no evidence of damage from a collision. He did find what

appeared to be blood on the hand grip and the step-up into the cab. He also observed the same substance on the steering wheel and on the box in which Claimant stored paper work. He stated that nothing appeared to be missing from the truck or cab, and he later checked and determined that Claimant still had his license, medical card and cash.

¶ 11 Meanwhile, a co-worker took Claimant to an urgent care facility, and medical personnel there referred Claimant to the hospital for treatment. Claimant was admitted to the hospital at 1:13 p.m., and received treatment that included closure of a laceration on the back of his head with medical adhesive.

¶ 12 On the third day after Claimant's injury, Employer sent Claimant for additional medical treatment because he was complaining of dizziness and loss of movement. Claimant was diagnosed with post concussion syndrome and cervical strain, and referred to a neurologist for further treatment. The neurologist recommended further examination by an ear, nose and throat doctor to assess Claimant's issues with balance and dizziness.

¶ 13 The medical evidence presented at trial revealed no dispute regarding the prior state of Claimant's health. He was in good physical condition. He was not taking any prescription medications. He had no history of a heart condition, headaches or fainting. At age 14, he had his spleen removed due to a sports injury. He had a previous work-related injury to his little finger. Claimant had passed his most recent Department of Transportation (DOT) physical on August 26, 2008, with no restrictions. In his driving career, he had passed 10–15 of these mandatory physicals that assessed driving fitness.

¶ 14 Claimant presented a report from his medical expert Dr. Trinidad, who commented on Claimant's "unremarkable" medical history. Dr. Trinidad concluded:

> I am of the opinion that [Claimant] sustained injuries in a work-related trauma that occurred while in the employ of Mobile Mini on or about April 6, 2009. His injury occurred when he was hit in the head. The exact mechanism of the injury

is uncertain. . . . He has symptoms of post-traumatic headaches and post-traumatic vertigo in addition to left sided hearing loss and an injury to his neck.

Dr. Trinidad found that Claimant was temporary totally disabled and in need of further medical treatment. It was his opinion that the major cause of the injuries and need for further treatment was the work-related head trauma.

¶ 15 Dr. Halford examined Claimant on behalf of Employer. He noted symptoms of scalp laceration, post-traumatic amnesia, vertigo, ataxia, poor balance and loss of hearing in the left ear. Dr. Halford concluded that this was likely a work-related injury given the history, presentation and the records reviewed. It was his opinion, with a reasonable degree of medical certainty, that Claimant's symptoms and presentation were "consistent with traumatic brain injury and probably eighth cranial nerve injury as well as benign positional vertigo." Dr. Halford could not, however, state with medical certainty "the exact manner in which the head injury occurred."

¶ 16 The trial court entered an order awarding Claimant TTD and medical treatment, based on its finding that his injuries arose out of and in the course of his employment and that his work activities were the major cause of the injuries for which he sought benefits. The order stated with particularity the legal and factual basis for the award. The trial court overruled Employer's "ideopathic event" defense to the claim, based on these findings:

THAT prior to this injury, there is no question claimant was in good physical condition, passing a DOT physical within the last year, and not having any history of fainting, stroke, irregular heart conditions or other conditions that could have caused claimant to faint.

. . . .

THAT there is no medical or physical evidence to support an idiopathic condition or fall. To the contrary, the blood evidence, if taken sequentially, appears on the gravel road beside the truck, and on the steps and in the cab of the truck, indicating the event occurred while strapping down the truck.

The Court finds it more likely than not that the claimant was injured while performing job duties.

Employer now seeks review in this Court.

## STANDARD OF REVIEW

■ ¶ 17 Whether an injury arises out of and occurs in the course of employment has historically been viewed as involving a factual determination to be resolved by the Workers' Compensation Court, and the any-competent-evidence standard of review has applied. *Barnhill v. Smithway Motor Express,* 1999 OK 82, ¶ 2, 991 P.2d 527, 529. *See also Parks v. Norman Mun. Hosp.,* 1984 OK 53, 684 P.2d 548. Appellate review for competent evidence has meant that we do not reweigh the evidence introduced at trial. *Id.* at ¶ 12, 684 P.2d at 552. Rather, the appellate court's "responsibility simply [has been] to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but only for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence." *Id.* Appellate courts reviewing a decision of the Workers' Compensation Court, "whether made by a trial judge or by the three judge panel, are bound by the factual findings of the trial tribunal if supported by competent evidence. Only in the absence of such support will the compensation court's decision be viewed as erroneous as a matter of law and subject to appellate vacation." *Garrison v. Bechtel Corp.,* 1995 OK 2, n. 6, 889 P.2d 273, 278 n. 6. This standard of review has changed due to a recent amendment to section 3.6 of the Workers' Compensation Act.

¶ 18 Title 85 O.S. Supp.2005 § 26 provides that a decision of the Workers' Compensation Court "shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law." Section 3.6 governs the extent to which the appellate court reviews a workers' compensation decision. As a result of the November 2010 amendment, section 3.6 now provides, in pertinent part:

The Supreme Court [or Court of Civil Appeals] may modify, reverse, remand for

rehearing, or set aside the order or award of the Workers' Compensation Court upon any of the following grounds:

1. The Court acted without or in excess of its powers;

2. The order or award was contrary to law;

3. The order or award was procured by fraud; or

4. The order or award was against the clear weight of the evidence.

85 O.S. Supp.2010 § 3.6(C), amended by Laws 2010, SB 1973, ch. 403, § 1, eff. November 1, 2010.

■■■ ¶ 19 Here, we deal with a clear legislative directive, through an amendment effective November 1, 2010, that governs the appellate court's authority to reverse or set aside a workers' compensation order or award. The amendment changes the manner for reviewing the Workers' Compensation Court's findings on non-jurisdictional issues of fact, now authorizing the appellate court to review those findings of fact to determine if they are "against the clear weight of the evidence." Whether this Court should apply that standard of review in this appeal, filed January 19, 2010, requires a determination of whether the amended statute "represent[s] more than a mere procedural reform and intrude[s] upon substantive rights." *Scruggs v. Edwards*, 2007 OK 6, ¶ 8, 154 P.3d 1257, 1261.[1]

¶ 20 A standard of review defines the level of deference the appellate court gives to decisions of the trial court. *See* Ronald R. Hofer, *Standards of Review—Looking Beyond The Labels*, 74 Marq. L.Rev. 231, 232 (1991). A standard of review is dictated either by a "long history of appellate practice," or "explicit statutory command." *Pierce v. Under-*

*wood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). The Oklahoma Supreme Court explained in *Parks* that in the pre–2010 version of section 3.6 the Legislature established the clear weight of the evidence standard of review for a trial judge's findings of non-jurisdictional facts by a three-judge panel. The Court also noted that section 26 governed the standard of review for the Oklahoma appellate courts of decisions "whether made by the trial judge or by the panel." *Parks*, 1984 OK 53 at ¶ 11, 684 P.2d at 551–52. Finding that section 26 limited appellate review to questions of law, the Court concluded that the Workers' Compensation Court's findings of fact must be accepted if supported by any competent evidence. The amended section 3.6 expressly authorizes the appellate courts to now set aside findings of fact by the Workers' Compensation Court if the finding is "against the clear weight of the evidence," even those findings that are supported by any competent evidence.

■■■ ¶ 21 Generally, a workers' compensation claim is governed by the law in effect when the claimant's injury occurred. *See* 85 O.S. Supp.2005 § 3.6(F).[2] And, amendments to the workers' compensation statutes typically are "not given retroactive effect unless the Legislature has made its intent to do so clear." *CNA Ins. Co. v. Ellis*, 2006 OK 81, ¶ 13, 148 P.3d 874, 877. There is, however, a well-established exception to this general rule. Legislation impacting "only matters of procedure," or that "relates solely to remedies" and "does not create, enlarge, diminish, or destroy accrued or contractual rights" operates retroactively and "is presumed to be applicable to all actions, even those that are pending." *Cole*, 2003 OK 81 at ¶ 8, 78 P.3d at 546 (footnotes omitted). In a recent work-

---

**1.** This Court entered an order on December 3, 2010, setting this case for oral argument. The order advised the parties not only to be prepared to address all of the issues raised in the appeal, but also to specifically address the applicable standard of review. On December 20, 2010, the parties appeared before this Court and presented arguments for and against application of the amended section 3.6.

**2.** This section provides: "Benefits for an injury shall be determined by the law in effect at the

time of the injury." (Renumbered by the 2010 amendment to § 3.6(G)). The statute in effect on the date of injury "forms a portion of the contract of employment and determines the substantive rights and obligations of the parties. No subsequent amendment that has the effect of increasing or diminishing the amount of compensation recoverable can operate retrospectively to affect any accrued rights and fixed obligations." *Cole v. Silverado Foods*, 2003 OK 81, ¶ 7, 78 P.3d 542, 546 (footnotes omitted).

ers' compensation case, the Oklahoma Supreme Court reiterated:

> This exception provides that *amendments relating solely to remedies and affecting modes of procedure do operate retrospectively and apply to pending proceedings.* This exception cannot be invoked, however, if the amendment represents more than a mere procedural reform and intrudes upon substantive rights.

*American Airlines, Inc. v. Crabb*, 2009 OK 68, ¶ 12, 221 P.3d 1289, 1292 (emphasis added). *See Scruggs v. Edwards*, 2007 OK 6, 154 P.3d 1257 (observing general rule that statutes relating solely to remedies and affecting only modes of procedure operate retroactively and apply to pending workers' compensation proceedings, and holding that 2005 amendments to the Workers' Compensation Act, which made Federal Rule of Evidence, Rule 702, and U.S. Supreme Court opinions construing that Rule part of workers' compensation procedure, should be applied to all claims regardless of the claimants' dates of injury).

¶ 22 We are not dealing here with an amendment that increases or diminishes compensation, nor one that expands or restricts the injuries for which compensation is allowed. The amendment to section 3.6 does not affect the substantive rights and liabilities of the parties but directs the level of appellate court deference required for non-jurisdictional findings of fact made by the Workers' Compensation Court.

¶ 23 Further, we do not find that the amendment affected trial procedure in the Workers' Compensation Court in any substantive way. Regardless of the standard of review in the appellate courts, a claimant is not entitled to compensation for injury unless that right has been established in the Workers' Compensation Court by a preponderance of the evidence. *See HAC, Inc. v. Box*, 2010 OK 89, ¶ 11, 245 P.3d 609; 85 O.S. Supp.2005 § 1.1(B). The evidentiary burden governing affirmative defenses the employer might seek to establish has not changed. If the claimant has established all of the essential elements of his claim, then the employer has the burden to offer evidence that would refute compensable causation and the claimant's right

to recovery. *See Pauls Valley Travel Ctr. v. Boucher*, 2005 OK 30, ¶ 13, 112 P.3d 1175, 1182. The burden of persuasion remains with the claimant. *See American Mgmt. Sys., Inc. v. Burns*, 1995 OK 58, ¶ 6, 903 P.2d 288, 291. These standards determine the parties' trial strategy with respect to the presentation of evidence. We fail to see any impact on this process resulting from application of a different standard of appellate review than the one in effect at the time the case was tried.

¶ 24 It may be that the 2010 amendment to section 3.6 will impact the decision to appeal an adverse ruling. For example, in cases where the unsuccessful party's position was supported by substantial evidence, the right to appeal may have been abandoned because "some" evidence supported the Workers' Compensation Court's decision. However, in those cases the time to appeal has passed and cannot be revived by application of any particular standard of review. We must apply the correct standard of review to the cases pending in this Court.

¶ 25 Because section 3.6(C) is an amendment "in the nature of 'a directive'" to the appellate courts rather than an amendment affecting "the substance" of a workers' compensation claim, we find it is a change in the "'mode of procedure' subject to retrospective application." *Triple D. Excavation v. Edwards*, 2003 OK CIV APP 38, ¶ 7, 70 P.3d 884, 886 (citing *Benson v. Blair*, 1973 OK 102, ¶ 6, 515 P.2d 1363, 1365). Although different from the standard of review applicable when this claim or the petition for review thereof was filed, the standard of review in effect when this appeal was ready for decision is that provided in the 2010 version of section 3.6(C). Therefore, we review the factual issues in this case to determine whether they are against the clear weight of the evidence.

¶ 26 We recognize that Division III of this Court reached a different result in *Tennell v. Horsehead Corp.*, No. 107,836 (December 27, 2010) (petition for reh'g pending). In our view, the cases holding that changes in appellate procedure affect substantive rights are distinguishable. Generally, those cases have involved changes in the right to appeal or the

method of perfecting an appeal, where the application of the new law would have resulted in the dismissal of the appeal. *Cf. Poafpybitty v. Skelly Oil Co.*, 1964 OK 162, ¶ 19, 394 P.2d 515, 520 (applying prospectively its pronouncement on an amendment to 12 O.S. § 651 regarding whether errors of law may be saved for review by their inclusion in a motion for new trial, because the amendment, as interpreted by the Court, "effects a drastic change of a crucial step in the perfection of an appeal," and prospective application would "avert injustice and unnecessary hardship"). The parties in this case have made no such argument, and the judicial policy underlying decisions giving purely prospective application to new procedural enactments does not come into play here. We believe our application of the 2010 amendment to section 3.6 is not only consistent with the general rule of appellate practice discussed in *Poafpybitty*, but also consistent with the Supreme Court's recent discussion of amended section 3.6 in *HAC, Inc. v. Box*, 2010 OK 89, n. 1, 245 P.3d 609.

## ANALYSIS

### I. Claimant's Burden To Establish A Compensable Injury

█ ¶ 27 Before entitlement to any benefits for his alleged injuries, Claimant had the burden of establishing all elements of proof regarding compensability of those injuries. *See American Mgt. Sys., Inc. v. Burns*, 1995 OK 58, ¶ 6, 903 P.2d 288, 292. He had the burden of showing that his injuries "both occurred 'in the course' and 'arose out of' [his] employment," *K–Mart Corp. v. Herring*, 2008 OK 75, ¶ 9, 188 P.3d 140, 144 (quoting *Corbett v. Express Pers.*, 1997 OK 40, ¶ 7, 936 P.2d 932, 934), and this included establishing that a work-related incident was the major or predominate cause of the specific injuries for which he sought compensation. *See Wilson v. Catoosa Pub. Schs.*, 2007 OK 20, ¶ 12, 157 P.3d 1149, 1152.[3] Claimant was required to prove this by a "preponderance of the evidence." 85 O.S. Supp.2005 § 1.1(B).[4]

[8–11] ¶ 28 The term "arises out of" contemplates a causal relationship between the act engaged in at the time the injury occurred and the requirements of employment. *Barnhill v. Smithway Motor Express*, 1999 OK 82, ¶ 12, 991 P.2d 527, 531. "[I]t must appear to the rational mind, upon considering all the circumstances, that a causal connection exists between the conditions(s) under which the work is to be performed and the resulting injury." *Id.* at ¶ 12, 991 P.2d at 531–32 (citing *City Bus Co. v. Lockhart*, 1951 OK 86, 229 P.2d 586). The term "in the course of" relates to the time, place or circumstances under which the injury is sustained. *Id.* at ¶ 11, 991 P.2d at 531. "An injury is received in the course of employment if it occurs 'within the period of employment at a place where the workman reasonably may be and while he is reasonably fulfilling a duty of his employment or engaged in doing something incidental thereto.'" *Herring*, 2008 OK 75 at ¶ 14, 188 P.3d at 145 (quoting *Barnhill*, 1999 OK 82 at ¶ 11, 991 P.2d at 531). "To be in the course of employment an injury must 'arise within time and space limitations of employment, and also within the course of activity related to employment.'" *Id.* (quoting *Richey v. Commander Mills, Inc.*, 1974 OK 47, ¶ 6, 521 P.2d 805, 807).

¶ 29 Employer asserts that Claimant did not and could not meet his burden of proof. Employer points out that there is no evidence in the record that establishes the specific "mechanism" of Claimant's injury, and neither Claimant nor any other witness was able to provide testimony identifying the par-

---

**3.** " 'Compensable injury' means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness. An injury, other than cumulative trauma, is compensable only if it is caused by a specific incident and is identifiable by time, place and occurrence unless it is otherwise defined as compensable in this title. . . . " 85 O.S. Supp.2005 § 3(13)(a).

**4.** "Preponderance of the evidence" means that evidence which, to the trier of fact, seems most convincing and more probably true. *Peyton v. McCaslin*, 1966 OK 4, ¶ 18, 417 P.2d 316, 321; *Appeal of Tucker*, 1975 OK CIV APP 40, ¶ 8, 538 P.2d 626, 629. It is evidence that persuades that a fact "more probably exists than it does not exist." 2 L. Whinery, *Commentary on the Law of Evidence*, § 8.07 (1994).

ticular physical activity Claimant was engaged in at the moment of injury. Employer argues, therefore, that the trial court's decision must, necessarily, be vacated as the product of speculation or guesswork. Employer cites *Barnhill*, and *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795, as authority supporting its argument. These cases, however, do not support Employer's apparent reasoning that direct evidence was required to support the trial court's finding of a compensable injury and award of benefits herein.

## II. Proof By Circumstantial Evidence

■ ¶ 30 While it is necessary for a workers' compensation claimant to establish a compensable injury by a preponderance of the evidence, the required proof is not limited to only direct evidence or the testimony of eye witnesses. *See Flint v. Downum Constr. Co.*, 1968 OK 103, ¶ 19, 444 P.2d 200, 203–04. The claimant may prove the facts necessary to establish a compensable injury either by direct or circumstantial evidence alone, or a combination of the two. *Marby Constr. Co. v. Mitchell*, 1955 OK 213, ¶ 10, 288 P.2d 1108, 1110. *See also Tulsa Frozen Foods Co. v. Pendergraft*, 1957 OK 281, ¶ 0, 317 P.2d 1115, 1115 (Syllabus 1) ("Whether an injury arose out of the employment is a question of fact and may be proved by circumstantial evidence."). "[T]he facts offered as circumstantial evidence must afford a logical and legal basis for a reasonable inference of the existence or nonexistence of the fact to be established." *Berryhill v. Prudential Premium Co. of Okla.*, 1964 OK 181, ¶ 6, 394 P.2d 520, 522. The circumstantial evidence includes all of the reasonable inferences to be drawn therefrom. *See Lanman*, 1998 OK 37 at ¶ 16, 958 P.2d at 801. Further, the circumstantial evidence "need not rise to a degree

of certainty which would exclude every other conclusion than that reached" and need not possess "a degree of certainty which excludes every reasonable conclusion other than that reached by the finder of facts." *In re Death of May*, 1978 OK 145, ¶ 12, 586 P.2d 738, 741. *See Downum*, 1968 OK 103 at ¶ 19, 444 P.2d at 203–04; *Young v. Neely*, 1960 OK 129, ¶ 9, 353 P.2d 111, 113; *Mitchell*, 1955 OK 213 at ¶ 0, 288 P.2d at 1109 (Syllabus 1) ("In establishing his right to work[er]'s compensation benefits a claimant is not restricted to direct evidence but may also use circumstantial evidence that is not so certain as to exclude every reasonable conclusion other than the one arrived at by the trial tribunal.").[5] The question presented on review, therefore, is not whether there is direct proof of the "mechanism" of injury but whether, considering all of the evidence of record, the trial court's finding of a compensable injury is "against the clear weight of the evidence." Section 3.6(C).

¶ 31 Although Claimant was unable to recall the moment he suffered the blow to his head, his inability to testify conclusively regarding the "mechanism" that actually caused his head injury does not diminish the logical and supportable inferences from undisputed physical evidence that he was performing work-related duties or activities incidental thereto at the critical time, and that a work-related risk was the major cause of his head injury on April 6, 2009. There is ample circumstantial evidence in the record that shows, as required by 85 O.S. Supp.2005 § 3(13)(a), the "time, place and occurrence," of a work-related injury. Indeed, there is no other reasonable explanation for Claimant's injury, other than employment-related risk, that can come from the admitted evidence.

¶ 32 It is undisputed that Claimant was injured on a working day, during his as-

---

**5.** We recognize that these cases were decided prior to the workers' compensation law reforms in 1986, at a time when the law indulged in a presumption that a claim for injury or death of an employee comes within the provisions of the workers' compensation act. *See, e.g., May*, 1978 OK 145 at ¶ 11, 586 P.2d at 740. We cite these cases simply to demonstrate that the trial court may consider circumstantial evidence on an equal footing to all other proof in a workers' compensation case, not for resolving doubt in

favor of an injured employee or diminishing the burden of establishing the required employment-related nexus. *See* 2 L. Whinery, *Commentary on the Law of Evidence*, § 8.08 (1994) (explaining that Oklahoma's evidence code makes no distinction between direct or circumstantial evidence, but simply requires the finder of fact to determine the facts in accordance with the preponderance of the evidence in the case, whether direct or circumstantial or both).

signed working hours. There was objective, physical evidence indicating that he was injured at a place where he properly should have been while in the performance of his work-related duties. There was no evidence that Claimant had stopped working to attend to a personal mission. There was no evidence of a purely personal risk factor, such as a crime intentionally inflicted on Claimant by a person who harbored personal ill will against him. *See Flanner v. Tulsa Pub. Schs.*, 2002 OK 8, ¶ 5, n. 11, 41 P.3d 972, 978 n. 11 (Opala, J., dissenting). There was no evidence to indicate that he fabricated his claim. Therefore, we do not find the trial court's order to be against the clear weight of the evidence. *See Pauls Valley Travel Ctr. v. Boucher*, 2005 OK 30, ¶ 13, 112 P.3d 1175, 1182.

### III. Employer's Idiopathic Event Defense

██ ¶ 33 In cases "where a pre-existing idiopathic condition[6] is the sole cause of a worker's injury and no other factor operates to contribute to the injury, no compensation is awarded." *Flanner*, 2002 OK 8 at ¶ 7, 41 P.3d at 974. The trial court concluded that there was "no medical or physical evidence" to support Employer's alternative theory that Claimant's injury resulted solely from an idiopathic condition. The trial court reached its conclusion regarding the major cause of Claimant's injuries after determining the weight and probative value of the expert medical evidence and Claimant's medical history. We do not find the trial court's conclusion to be against the clear weight of that evidence.

### CONCLUSION

¶ 34 How Claimant was injured, whether his injury was in the course of and arose out of his employment, and whether his employment was a major cause of his injury were dependent on the determination of fact questions by the trial court. The facts and circumstances disclosed by the evidence, along with reasonable inferences that may be drawn from them, support the determination that Claimant sustained a compensable injury. *See Barnhill*, 1999 OK 82 at ¶¶ 19–23, 991 P.2d at 533–34. The trial court's finding that the major cause of the specific injuries for which Claimant sought compensation had an employment-related source is not against the clear weight of the evidence. Employer has demonstrated no basis for disturbing the trial court's determination that Claimant's injury is compensable. *Id.* at ¶ 1, 991 P.2d at 530. We, therefore, sustain the order of the Workers' Compensation Court.

¶ 35 **SUSTAINED.**

BARNES, P.J., and WISEMAN, J., concur.

---

6. "An idiopathic condition is internal. It spontaneously precipitates a worker's injury." *Boucher* at ¶ 14, 112 P.3d at 1182. "Idiopathy is a morbid state of spontaneous origin. It is neither sympathetic nor traumatic." *Id.* at n. 34, 112 P.3d at 1182 n. 34 (citing Dorland's Illustrated Medical Dictionary 660 (23rd ed.1951)). An idiopathic fall is not the same as an unexplained fall, and the two are treated differently in workers' compensation law. *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 9.01 (1999), for a discussion of unexplained falls and the danger of confusing unexplained falls with idiopathic falls.