2015 OK CIV APP 84

**LMR OIL, LLC, and Old Glory Insurance Co., Insurance Carrier, Petitioners,**

v.

**Jennifer FRAZIER and The Workers' Compensation Court, Respondents.**

No. 111,930.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 4, 2015.

Cathy C. Barnum, II, Donald R. Lindauer, II, Kelley A. Bodell, Barnum & Clinton, PLLC, Norman, OK, for Petitioners.

Robert L. Smith, Robert L. Smith, PC, Tulsa, OK, for Respondent.

JANE P. WISEMAN, Presiding Judge.

¶1 LMR Oil, LLC (Employer) and Old Glory Insurance Co. appeal from an order of the Workers' Compensation Court determining compensability and awarding temporary total disability (TTD) benefits to Claimant, Jennifer Frazier. The issues on appeal are (1) whether the trial court's order is contrary to the weight of the evidence, (2) whether the trial court improperly shifted the burden of proof to Employer, and (3) whether the trial court violated Employer's due process rights by refusing to play a surveillance video in open court, by advocating on behalf of Claimant, and by prejudging the claim before reviewing the evidence.[1] We conclude that the

---

1. After this Court issued its Opinion in this case on July 10, 2014, Employer filed a Petition for Rehearing asking this Court to address the degree of deference to be given the trial court in

trial court's decisions regarding compensability and TTD are not contrary to the weight of the evidence and the court did not improperly shift the burden of proof to Employer. We further conclude that Employer failed to show that its rights were violated by the trial court's decision not to view the surveillance video in open court, or that the trial court unfairly advocated on behalf of Claimant or otherwise prejudged the evidence. We do, however, agree with Employer that the finding that Claimant was not terminated for cause cannot stand because that issue was not before the court. Accordingly, we sustain the trial court's decision determining compensability and awarding Claimant TTD benefits and medical care, but we vacate the portion of its order finding that Claimant was not terminated for cause.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Claimant filed a Form 3 on December 19, 2012, alleging injury to her back after she "slipped on spaghetti" at work on November 28, 2012. Employer denied Claimant sustained an injury to her back, denied that she was temporarily totally disabled, and denied medical treatment. Employer later denied that Claimant's injury was work-related, denied that her employment was the major cause of her injury, and alleged that she had a pre-existing condition.

¶ 3 At the trial held on April 22, 2013, Claimant testified that she worked as a clerk for Employer and worked in the store's deli. She "stocked the cooler, cleaned it" and "made food in the deli; whatever they needed." Claimant testified that on the day she was injured, she "had gone back to the deli to help the pre-lunch group." She "had gotten the spaghetti out; and [she] had made coneys and stuff." She testified about the November 28, 2012, incident as follows:

So, after that part was done, then I was cleaning up so it wouldn't be a mess for the next rush, and I put the lid tightly on the spaghetti. Then I finished cleaning up all the chili, cheese, and onions; and then

when I grabbed the spaghetti and turned to go to the refrigerator, the lid popped off the spaghetti, and the water spilled all over my arm, the floor, and went under the cabinets; and then I slipped on the water and spaghetti.

I grabbed the counter in front of me, it was one of the roll arounds with the handle on the end; I grabbed it to keep from falling.

Claimant testified that she did not fall. She did not report that she fell on Employer's incident report, on the Form 3, in her deposition, or to Dr. Gillock. Claimant maintained that she reported only that she slipped.

¶ 4 Larry Rogers, Jr., took her to Claremore Physicians Immediate Care for treatment shortly after she slipped. Claimant stated that she did not report to any doctors that she slipped and fell but repeatedly stated that she slipped.

¶ 5 Claimant did not return to work after seeing the doctor. After returning to work on November 30, 2012, Rogers questioned her about whether she told the doctor that she fell. She stated she never told the doctor that she fell. Rogers told her he would not let her work that day. Later that day, Larry Rogers, Sr., called her and stated, " 'We're just not going to extend your employment anymore, and so we're going to let you go.' " She testified that she filed for unemployment benefits and Employer did not contest her claim.

¶ 6 Claimant stated that as a result of the incident when she slipped at work, she has pain in her lower back that radiates down to her toes and numbness in her buttocks. During cross-examination, Claimant testified that her problems started after she slipped. Employer questioned Claimant about her deposition testimony concerning prior back injuries. Claimant explained that in her deposition, she did not recall ever having "seen anybody" about hurting her back before the incident at work. Concerning her history of back injury, the Court stated:

light of the Oklahoma Supreme Court's pronouncement in *Peoplelink, LLC v. Bear*, 2014 OK 65, —— P.3d ——, issued July 1, 2014. We

hereby grant the Petition for Rehearing, withdraw the July 10, 2014 Opinion, and substitute the present Opinion in its stead.

She testified, I believe, as I understand it, the Claimant stipulates she did not tell you about [any prior back injury while at] Coweta Manor in her deposition.

You've established that you gave her an opportunity in the deposition. She said she didn't remember at the time. Your suggestion is that it is because she, I assume, left it out intentionally. I get the point.

Employer's attorney then stated, "Yes, Your Honor. I'm going to the witness's credibility; that is correct."

¶ 7 The Court responded:

I understand that.

What I'm saying is, I'm not novice to this area of law. I'm not a novice judge. I get the point.

If we spend 10 minutes on reading more of a deposition transcript to get to the nut, which is simply she didn't tell you; she says she forgot. You say she remembered when her attorney told her, and that there's something that bears on her credibility; I get that. Let's get on to something.

¶ 8 Claimant admitted that when she saw a doctor in 2010, she said that she had pain in the same area of her back, but it is now more severe and in more areas. She admitted being diagnosed with lumbar strain during her previous employment with Coweta Manor. Employer's attorney pointed out that in her deposition, Claimant testified she had never been treated or seen for injuries to her back and said she had no prior back complaints.

¶ 9 Employer's attorney stated to the court that Employer was denying that the incident at work as reported by Claimant ever occurred.

¶ 10 Robert G. Robinson, Jr., the owner of RGR Security Solutions, testified regarding surveillance video taken at Employer's store on November 28, 2012. Rogers, Jr., asked Robinson for footage from the kitchen/deli camera from 11:49 a.m. to 12:33 p.m. on the day of the incident. Robinson testified that because of the software they use for the

surveillance system, there is no way to edit or manipulate the data. As he explained, because "the cameras are set up for motion only," "there will be bits and pieces where there's no time frame because there was no motion in that camera's view during that time." The camera begins recording when it detects motion. During Robinson's direct testimony, the trial court stated that it would not view the video in open court but would view it in chambers.[2] The trial court reiterated this later in Robinson's testimony.[3]

¶ 11 Rogers, Jr., testified that he watched the video and never saw Claimant twist and grab a table and never saw anything that indicated she had immediate back pain after the spaghetti spilled. He observed the spaghetti spilling and Claimant walking through the spaghetti, but he never saw her slip, fall, or grab a table. He also testified that he did not observe anything in the video indicating Claimant had any symptoms or complaints to her back.

¶ 12 Rogers, Jr., recommended that Claimant be terminated from her employment because she made a fraudulent claim. He stated that, after viewing the video, it did not appear that Claimant slipped or fell.

¶ 13 On cross-examination, Rogers, Jr., testified that you cannot see water on the floor in the video, but "[y]ou can tell by the way that [Claimant] is kind of skating across it" that there is water on the floor. After Claimant "skated across the noodles and water," she placed the container in the refrigerator. He explained the "skating across" description as follows: "Well, after getting her resituated, where she grabbed the new container she was going it [sic] take into the frig, she went across it and kind of allowed her legs to slip a little bit, so that, you know, as to continue to walk like a skating motion." Rogers claims it "was an intentional slip." Rogers stated that there is no audio connected to the video.

¶ 14 Rogers testified that Claimant was fired for cause. He claimed that Employer contested the payment of unemployment benefits but they "were told it wouldn't go

against [them],[4] and so [they] didn't do anything after [they] disputed it." Claimant was awarded unemployment benefits without a hearing.

¶ 15 The court asked Rogers several questions, including whether he agreed that "there was something that the doctor found that was worthy of treatment." Rogers said, "Yes."

¶ 16 Donna Dooley, a manager at Employer's store, testified that Claimant complained to her of back pain on November 23, 2012, and Claimant indicated the pain was due to a previous back injury. Dooley testified that Claimant had complained of back problems on multiple occasions, but she was able to do her job without restrictions.

¶ 17 Claimant presented the medical report of M. Stephen Wilson, M.D., dated December 14, 2012, in which Dr. Wilson stated that in his opinion, Claimant has been temporarily totally disabled since November 28, 2012. He stated the major cause of Claimant's injury to her lumbar spine was the employment-related activities she was performing on the date of her injury.

¶ 18 Employer presented the report of William R. Gillock, M.D., who found that there was no period of TTD. He concluded that as to major cause, Claimant's complaints were unrelated to employment because there is no medical evidence of a work-related injury and Claimant's description of the injury and her deposition testimony are inconsistent and not supported by the surveillance video. He stated, "On the surveillance video, I did not see any twisting or any other activity that would have resulted in a work-related injury." Dr. Gillock concluded that no injury occurred.

¶ 19 The trial court found that Claimant was credible and that she sustained an accidental personal injury to her lumbar spine arising out of and in the course of her employment with Employer. The court stated:

THAT the Court viewed the video surveillance of the incident. Claimant alleges she slipped on a wet floor of spaghetti and caught herself. Respondent witness, Lar-

ry Rogers, testified he observed claimant to "skate across the wet noodles on the floor." In either scenario, it is undisputed that claimant's normal walking gait was interrupted by the wet floor. It is also undisputed that claimant was diagnosed with LUMBAR strain by Claremore Immediate Care on the date of the incident. The video does not disprove an incident or injury.

¶ 20 The court also found that Claimant was not terminated for cause. It stated, "The basis of termination was allegedly making a fraudulent claim which this order implicitly rejects. In addition, claimant filed for and received unemployment. Respondent was required to offer claimant light duty." The court concluded Claimant was temporarily totally disabled from November 28, 2012, through January 5, 2013, and awarded her benefits for this time period. It reserved the issue of permanent injury for future hearing. The court also ordered Employer and/or its insurance carrier to provide Claimant with reasonable and necessary medical treatment and to pay medical expenses incurred as a result of the injury.

¶ 21 Employer appeals.

## STANDARD OF REVIEW

¶ 22 "Whether employment was the major cause of the injury is an issue of fact to be determined under the applicable standard of review and reviewed by the applicable standard on appeal." *Rural Waste Mgmt. and Indem. Ins. Co. of North Am. v. Mock,* 2012 OK 101, ¶ 6, 292 P.3d 24. "The standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues.... [and] is determined as of the date of injury." *Williams Cos., Inc. v. Dunkelgod,* 2012 OK 96, ¶ 18, 295 P.3d 1107. Claimant asserts the date of injury was November 28, 2012. Title 85 O.S.2011 § 340(D), the statute in effect at the time of the claimed injury, provided:

After the effective date of this act, regardless of the date of injury, the Supreme Court may modify, reverse, remand for

---

4. According to Rogers, Employer was advised that this claim would not go against the company because Claimant "had not worked for [Employer] long enough for those benefits to qualify."

rehearing, or set aside the order or award upon any of the following grounds:

1. The Court acted without or in excess of its powers;

2. The order or award was contrary to law;

3. The order or award was procured by fraud; or

4. The order or award was against the clear weight of the evidence.

We therefore review the decision of the Workers' Compensation Court to determine whether it is against the clear weight of the evidence.

## ANALYSIS

¶ 23 Although Employer lists 18 "Issues and Errors on Appeal," it addresses only five issues in its brief in chief. We deem all issues not addressed in the brief to be waived. Supreme Court Rule 1.11(k)(1), 12 O.S. Supp.2013, ch. 15, app. 1 ("Issues raised in the Petition in Error but omitted from the brief may be deemed waived. Argument without supporting authority will not be considered.").

¶ 24 For its first issue, Employer asserts that the trial court's conclusions that Claimant's injury is compensable and that her employment is the major cause of her injury are against the clear weight of the evidence. Title 85 O.S.2011 § 308(10)(a) provided:

"Compensable injury" means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness. *An injury, other than cumulative trauma, is compensable only if it is caused by a specific incident and is identifiable by time, place and occurrence unless it is otherwise defined as compensable in this act.* A compensable injury must be established by objective medical evidence. The employee has the burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There is no presumption from the mere occurrence of such unexpected or unforeseen injury

that the injury was in fact caused by the employment.

(Emphasis added.) Pursuant to 85 O.S.2011 § 308(28):

"Major cause" means more than fifty percent (50%) of the resulting injury, disease or illness. A finding of major cause shall be established by a preponderance of the evidence. A finding that the workplace was not a major cause of the injury, disease or illness shall not adversely affect the exclusive remedy provisions of this act and shall not create a separate cause of action outside of this act. . . .

¶ 25 Employer asserts that "there is NO evidence of any incident which could be interpreted as 'injury producing' as the irrefutable evidence of the work place surveillance video demonstrates." It argues that the video shows that Claimant "does not really 'slip,' or 'twist,' and then 'catch herself' on the counter, as claimed." Employer asserts that any disability resulted from accidents that did not occur at work. "The issue of whether disability results from an accidental injury, or from a pre-existing disease or prior injury is a fact question for determination by the Workers' Compensation Court." *Berg v. Parker Drilling Co.,* 2004 OK 72, ¶ 13, 98 P.3d 1099.

¶ 26 The parties presented conflicting evidence at trial. "The Workers' Compensation Court, as the trier of fact, determines the credibility of witnesses, weighs the evidence, and draws reasonable inferences from the facts and circumstances in evidence." *HAC, Inc. v. Box,* 2010 OK 89, ¶ 13, 245 P.3d 609. Claimant testified that she injured her back as she walked through water and pasta she had spilled on the floor. She went to the doctor that day and was diagnosed with lumbar strain. Employer claims the video surveillance evidence disproves Claimant's allegations.

¶ 27 The trial court specifically found Claimant to be credible. It further found that "Claimant alleges she slipped on a wet floor of spaghetti and caught herself" and that Rogers, Jr., observed on the video that Claimant "skate[d] across the wet noodles on the floor." The court concluded, "In either

scenario, it is undisputed that claimant's normal walking gait was interrupted by the wet floor." It further found, "It is also undisputed that claimant was diagnosed with LUMBAR strain by Claremore Immediate Care on the date of the incident." The court specifically found that "[t]he video does not disprove an incident or injury."

¶ 28 After viewing the video, we conclude that the trial court's decision is not against the clear weight of the evidence. The Oklahoma Supreme Court in *Peoplelink, LLC v. Bear,* 2014 OK 65, —— P.3d ——, clarified how the appellate courts are to review decisions of the workers' compensation court under the new standard of review set forth in 85 O.S.2010 § 3.6 allowing appellate courts to modify, reverse, remand for rehearing, or set aside an order or award if " '[t]he order or award was against the clear weight of the evidence.' " [5] *Id.* ¶ 1.

¶ 29 In *Peoplelink,* the Court explained that the new standard of review, "against the clear weight of the evidence," is identical to that applicable in equity cases. *Id.* ¶ 6. "[I]t is likely the Legislature intended appellate courts to show the same deference in reviewing workers' compensation court rulings, as appellate courts show when reviewing equity judgments, to determine if they are against the clear weight of the evidence." *Id.* Because trial courts have the advantage of observing witnesses on the stand, an advantage denied to the appellate courts, reviewing courts should show "great deference to trial court determinations of the credibility of the witnesses and the weight to be given their testimony." *Id.* ¶ 7. Employer has argued that no deference should be given to the trial court's conclusions from viewing the surveillance video of the incident because this Court has seen the same video.[6] We conclude that our review of this evidence, although firsthand like the trial court's, must be considered, not in isolation, but with all the evidence in the record, in determining whether the decision is against the clear weight of the

evidence. We share with the trial court the same firsthand review of records as well as documentary and photographic evidence, but that cannot be said of the witnesses' testimony where we must rely on the "cold record" of transcripts of proceedings without the benefit of personal observation and discernment. We give appropriate deference to the trial court as weighed with all the evidence under review.

◼ ¶ 30 With these considerations in mind, in any review of workers' compensation decisions arising under the fourth enumerated ground in 85 O.S.2011 § 340(D), we decline to apply any standard, including the *de novo* standard, other than that specified in that ground. As *Peoplelink* reiterates, "Before a lower court's decision can be reversed, 'the *entire record* will be *examined* and the *evidence weighed,* but the judgment of the trial court will not be reversed unless it appears to be *clearly* against the weight of the evidence.' " *Peoplelink,* 2014 OK 65, ¶ 7, —— P.3d —— (quoting *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, ¶ 12, 818 P.2d 475).

◼ ¶ 31 In the video, although Claimant is carrying the spaghetti container to the refrigerator and, contrary to her testimony, does not grab anything when she slipped, she does in fact slip. Employer asserts the video does not support Claimant's version of events, and we agree the slip seems minimal and Claimant's ability to walk normally after the slip appears unimpeded. The trial court as the trier of fact, however, found that Claimant was credible and that her "normal walking gait was interrupted" and when taken to the doctor on the day of the incident, she was diagnosed with lumbar strain. The video does not portray, nor does it assist us in determining, what Claimant's condition was subsequent to the actual incident. Having examined the entire record and weighed the evidence, we cannot conclude that the trial court's decision was against the clear weight of the evidence.

---

**5.** Although repealed in 2011 by the enactment of the new Workers' Compensation Code, 85 O.S. 2011 §§ 301–413, this standard of review was recodified in 85 O.S.2011 § 340(D) which is the provision in effect and therefore applicable in the present case.

**6.** The parties ably presented oral argument to this Division of the Court on the Petition for Rehearing on October 8, 2014.

¶ 32 Employer next asserts the trial court erred in shifting the burden of proof to Employer to disprove the injury. Employer states:

There can be no doubt that the trial court here shifted the burden of proof from Employee to Employer. The shift is explicit within the Order.... ("The video does not disprove an incident or injury."). It is emphatically not Employer's responsibility to "disprove" incident or injury. Employee had the duty to prove her alleged back injury arose out of her conduct at work. The only evidence that her work activities caused her alleged injury is her very specific description of the accident. She related slipping, twisting, and grabbing a countertop with both hands.

We reject Employer's assertion that the trial court improperly required Employer to disprove the injury. Claimant presented her testimony and medical evidence in support of her claim that she was injured at work. Employer then challenged Claimant's injury claim with lay testimony, medical evidence, and the surveillance video. The trial court did not require Employer to disprove the injury. Instead, Employer denied Claimant's version of events and presented evidence to support that denial which did not persuade the trial court.

¶ 33 Employer also contends the trial court erred as a matter of law because it decided an issue not before it by finding that Claimant was not terminated for cause. This, according to Employer, was outside the court's authority because the issue of Claimant's termination was not before the court. We agree.

¶ 34 A review of the record shows that the issue of the reason for Claimant's termination was not before the court. There also appears to be no prior notice that the issue would be tried on the date of the hearing on TTD. Because there was no notice that the issue would be before the court, the matter should not have been decided by the court. *See, e.g., Leeper v. Chickasha Plumbing Co.,* 1957 OK 302, ¶ 7, 318 P.2d 857 (court erred in deciding issue of permanent disability where there "was never any indication that any question would be considered other than

temporary disability."). The *Leeper* Court concluded, "We are of the opinion and hold that a determination of the issue of permanent disability prior to the time claimant has had an opportunity fully to develop that issue is a lack of due process of law." *Id.* We conclude that it was error to decide the issue of why Claimant was terminated when that issue was not before the court.

¶ 35 Employer next asserts the trial court violated its due process rights by refusing to play the surveillance video in open court, by aggressively advocating on Claimant's behalf, and by prejudging the evidence. Due process in workers' compensation cases includes the opportunity to be heard. *Public Supply Co. v. Mucker,* 2007 OK CIV APP 48, ¶ 9, 162 P.3d 234 (citing *Crussel v. Kirk,* 1995 OK 41, ¶ 14, 894 P.2d 1116). " 'A party's opportunity to present its case is an essential element of due process.' Due process requires an orderly proceeding in which the parties are given 'an opportunity to be heard, and to defend, enforce and protect their rights.' " *Id.* (quoting *Towne v. Hubbard,* 2000 OK 30, ¶ 19, 3 P.3d 154).

¶ 36 Employer claims that the surveillance video was pivotal to its defense and complains that "the trial court released all witnesses and evidently watched the video at some point after the trial." It argues, "Not only did the trial court's 'private viewing' of the video interfere with Employer's due process right to meet the charges against it, it also gave the appearance of injustice."

¶ 37 Employer asserts that when the trial court refused to allow it to play the video in open court, that denial "deprived Employer of the opportunity ... to confront Employee with the inconsistencies of her testimony." However, the citation to the transcript in Employer's brief shows that its request to view the video in open court occurred after Claimant had already testified. Nothing in the record indicates Employer sought to show the video during Claimant's testimony or to use the video in cross-examination, nor did Employer object on the two occasions the trial court stated it would view the video in chambers.

¶ 38 Employer further asserts "[n]ot only did the trial court's 'private viewing' of the video interfere with [its] due process right to meet the charges against it, it also gave the appearance of injustice." We conclude, however, Employer failed to show that it was prejudiced by the trial court's decision to watch the video in chambers. Employer's position regarding the incident as depicted on the video is clear from its cross-examination and argument. The court's order states that the court viewed the video and considered that evidence when it made its decision.

¶ 39 Employer also claims that the court "actively examined employer's witnesses in a manner evincing considerable concern for the rights of [Claimant] over those of Employer." We note that as a general rule, judges are not prohibited from questioning witnesses. *See, e.g.,* 12 O.S.2011 § 2614(B) ("The court may interrogate any witness whether called by itself or by a party."). Employer claims that the trial court advocated on Claimant's behalf. Although questioning witnesses alone is not a ground for reversal, demonstrated bias or prejudice could constitute grounds for disqualifying the judge. *See, e.g., Fields v. Saunders,* 2012 OK 17, n. 2, 278 P.3d 577 ("Personal bias or prejudice concerning a party makes a judge ineligible to act either as a trier of fact or a trier of law, and requires disqualification."). Our review of the court's questioning does not demonstrate bias or inclination favoring Claimant's case, and we find no basis to accept this argument as grounds for vacating the court's decision.[7] After review of the

record, we also find no indication that the court "prejudged" the evidence.

¶ 40 Employer's last argument is that the evidence does not support the finding that Claimant was not terminated for cause or the finding that Claimant was temporarily totally disabled. In our previous discussion, we determined that it was improper for the trial court to reach any conclusion on the issue of whether Claimant was terminated for cause. However, we also concluded that the trial court's decision that Claimant suffered a compensable work-related injury is not against the clear weight of the evidence.

### CONCLUSION

¶ 41 The Workers' Compensation Court's decision to award TTD benefits is not against the clear weight of the evidence. We sustain the court's order with the exception of its decision regarding the cause of Claimant's termination from employment. Accordingly we vacate paragraph 6 of the trial court's order and sustain the remainder.

¶ 42 **SUSTAINED IN PART AND VACATED IN PART.**

BARNES, C.J., and GOODMAN, J., concur.

---

7. If Employer viewed the trial court as biased in Claimant's favor, it could have sought disqualification pursuant to Workers' Compensation Rule 38, 85 O.S. Supp.2012, ch. 4, app. Employer did not do so. Rule 38 provides:

    A. Any party who feels that a fair and impartial trial or other hearing cannot be received from the trial judge to whom the matter is assigned, shall make written motion requesting such judge to withdraw from the case. That application need not set forth specific reasons. The trial judge may withdraw without further proceeding and immediately refer the matter to the presiding judge for reassignment.

    B. Any party aggrieved by an order of a trial judge who refused to grant a written request to disqualify, or transfer a claim to the presiding judge for reassignment, may seek corrective relief by invoking the appellate jurisdiction of the Court en banc in the manner and within the time provided by 85 O.S., Section 340(A).

    C. The Supreme Court will not entertain an original proceeding to disqualify a trial judge of the Workers' Compensation Court or direct such judge to transfer a claim to the presiding judge of that court for reassignment unless it is shown that the relief sought by the petitioner was previously denied by the Court en banc. An order of the assigned trial judge or the Court en banc which is favorable to the moving party may not be reviewed in any tribunal either by appeal or in any other procedural framework.

Workers' Compensation Rule 38, 85 O.S. Supp.2012, ch. 4, app.